[Civ. No. 1092.   Fifth Dist.   May 15, 1969.]

ANITA AZZARO et al., Plaintiffs and Appellants, v. BOARD OF SUPERVISORS OF FRESNO COUNTY, Defendant and Respondent.

Doty, Quinlan & Kershaw and William A. Quinlan for Plaintiffs and Appellants.

Robert M. Wash and Floyd R. B. Viau for Defendant and Respondent.

STONE, J.—The Board of Supervisors of the County of Fresno initiated proceedings to form an improvement district under the Municipal Improvement Act of 1913 (Sts. & Hy. Code, § 10000 et seq.) in connection with the widening of East Tulare Street between Winery Avenue on the west and Clovis Avenue on the east. Protests were filed by a number of owners, and this appeal followed a ruling as to the area included within the district.

Tulare Street runs through the City of Fresno to Clovis Avenue, a county highway; both are heavily traveled thoroughfares. About one year before commencing formation of the district, the county undertook to simply widen East Tulare Street between Winery and Clovis, and the only improvements then contemplated were concrete curbs, gutters, driveway approaches and drainage facilities. The county entered into right of way contracts with all but eight property owners along the entire mile and a half between Winery and Clovis. The contracts provided that each owner pay for curbs, gutters, driveway approaches and drainage facilities for his property, and each deposited the money to cover the cost thereof.

Later, it was decided to form an improvement district and, while the street was torn up, to also install water and sewer lines. However, the segment of East Tulare Street between Peach and Helm Avenues already had sewer and water lines, so only concrete curbs, gutters, driveway approaches and drainage facilities needed to be constructed. The areas on each side (west and east) of the Helm-Peach segment of the street had no water or sewer lines and consequently, in addition to concrete curbs, gutters, driveway approaches and drainage

facilities, it was planned to install sewer and water lines, and owners who had not signed contracts were assessed according to the cost of all improvements. The property of owners other than those between Helm and Peach, who had signed contracts, was assessed at an amount necessary to pay the additional cost of sewer and water lines, over and above the cost of curbs, gutters, etc., for which money had been already deposited. The land of owners between Peach and Helm, where sewer and water lines were already installed and who had also advanced the cost of their improvements by contract, was assessed at zero.

To summarize, there were three different bases for assessment: where money to cover all improvements to be placed on the property was on deposit, property was assessed at zero; where money to cover part of the improvements was on deposit, assessment was according to the cost of the remainder of the improvements; where no money was on deposit, assessment was for total cost of the improvements.

During the formation proceedings, owners representing 49.1 percent of the entire area filed protests pursuant to Streets and Highways Code section 10311. Plaintiffs contend that owners within the Peach-Helm segment should not have been considered owners for the purpose of computing the percentage of protests filed, because their land was assessed at zero. Were these owners excluded, protests would represent 63 percent of the area, and the county would be required to forego proceedings for formation of the district. (Sts. & Hy. Code, § 10311.)

After a protest hearing, as provided by section 10311, the board of supervisors ruled that all of the area between Winery and Clovis, including the Peach-Helm segment, was properly included within the boundaries of the proposed district. Plaintiffs sought a writ of mandate in the superior court, which, after a hearing, was denied.

This appeal hinges upon the interpretation of Streets and Highways Code section 10008, which provides: " 'Assessment district' means the district of land to be benefited by the improvement and to be specially assessed to pay the costs and expenses of the improvement and the damages caused by the improvement."

Plaintiffs rely upon the basic proposition that section 10008 forbids the inclusion within a district of property that is not to be benefited by the improvement. With this we agree. The controversy arises from plaintiffs' contention that the county,

by assessing the property between Peach and Helm at zero, acknowledged that there is no benefit to such property as required by section 10008.

The question is *res nova,* and it cannot be answered by an abstract interpretation of the language used in section 10008. To begin with, section 10209 of the Streets and Highways Code permits the execution of contracts similar to those the county entered into with landowners within the proposed district. Section 10209 provides: ''The proposed assessment of land within the district may contain an adjustment because of the contribution made to the proposed improvement by an owner, either past or present, who has donated land or any interest in land, which otherwise would have to be acquired by eminent domain or purchase, or who has done work at his expense which can be used as part of the proposed improvement.''

The validity of the contracts is not an issue; the question is whether section 10008 proscribes the inclusion within an improvement district of property assessed at zero by reason of a contract executed pursuant to section 10209.

It seems to us that plaintiffs' literal interpretation of section 10008 would nullify the legislative intent behind section 10209 in this instance, as obviously the section is designed to permit the very procedure that occurred here. We see no inconsistency by including property assessed at zero in the proposed district, indeed it would seem that section 10209 was utilized to implement the assessment part of section 10008.

We have in mind that many improvement districts include property upon which no improvement is to be constructed because the improvement nevertheless benefits the property, for example, as in a parking district. ▆ It is the purpose of section 10008 to insure that property noncontiguous to the improvement is not made a part of the district unless it is benefited by the proposed improvement and, a fortiori, that there shall be no assessment unless there is a benefit. Such is not the case here, since the widening of the street, construction of curbs, gutters, driveway approaches and drainage facilities, and installation of sewer and water lines, were improvements the county deemed to benefit only those owners whose property fronted on East Tulare Street. Insofar as the record is concerned, that determination by the county is not under attack. Thus the cost of the improvements to each parcel of property is the measure of benefit. The fairness of the assessments is not an issue under the pleadings; plaintiffs

do not contend that an assessment at zero is unfair, but that it constitutes an admission there is no benefit.

When the proposed improvements and the property affected are viewed as a whole, we cannot say that widening East Tulare Street is not a benefit to every owner in the area whose property borders the street.

We hold, and all that we hold, is that an assessment at zero of property of owners who have deposited the money to pay for the proposed improvements to their property pursuant to section 10209 is not repugnant to section 10008 simply because the benefit has been paid for in advance, thereby making an assessment for additional funds unnecessary. It follows that in ascertaining the percentage of protesting owners in proceedings pursuant to Streets and Highways Code section 10311 the owners between Peach and Helm were properly deemed to be property owners within the proposed district.

The judgment is affirmed.

Conley, P. J., concurred.