[Civ. No. 40998. Second Dist., Div. Four. Oct. 9, 1973.]

GERALD COGAN et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES, Defendant and Respondent.

taxation, as distinct from the power to condemn property for a public purpose.

**Counsel**

Hillel Chodos for Plaintiffs and Appellants.

Roger Arnebergh and Burt Pines, City Attorneys, James A. Doherty, Assistant City Attorney, and Herman Friedman, Deputy City Attorney, for Defendant and Respondent.

OPINION

JEFFERSON, Acting P. J.—Plaintiffs sought declaratory relief and an injunction in their effort to invalidate a portion of an assessment levied upon their property by the defendant city. The matter was heard by the trial court sitting without a jury and judgment was given to the defendant City of Los Angeles. Plaintiffs have appealed the judgment.

Many of the pertinent facts were stipulated to by the parties in the court below. On September 12, 1967, the City Council of Los Angeles adopted an ordinance setting forth its intention to improve four blocks of Reseda Boulevard (near Ingomar Street) between Saticoy and Strathern Streets. Reseda Boulevard was formerly known as Reseda Avenue and was originally a 50-foot-wide street. Over the years, substantial portions of Reseda Avenue were gradually widened to 100 feet by the defendant city. Reseda Avenue became Reseda Boulevard, a major thoroughfare running through the San Fernando Valley.

The proposed improvement project contemplated the widening of Reseda Boulevard between the described intersections to the uniform width of 100 feet, along with necessary grading, paving and construction.

Plaintiffs owned property within the improvement area, a lot which cornered at the Reseda-Arminta intersection, having 300 feet of frontage on Reseda Boulevard. Included was a strip of land 25 feet wide and about 280 feet long, which jutted out into the boulevard. It was necessary for the city to acquire an easement over this strip to achieve its objective of uniformly widening the street. All other easements necessary for the project had been previously acquired by the city through dedication by landowners whose properties abutted the thoroughfare. Since Reseda Boulevard is classified as a major highway, the owner of a lot abutting the highway must comply with section 12.37 of the Los Angeles Municipal Code by improving to the center line of the street and dedicating the land so improved to the city, before a building permit would be issued by the city allowing multiple unit construction. The other owners in the improvement area had already followed this course, and the area was, at the time the improvement project commenced, an apartment house area.

Plaintiffs had not dedicated their land. After the ordinance was passed, they were approached concerning the sale of the needed easement to the city by a right-of-way agent for the city, named Frisch; the owners referred him to their attorney, Chodos, for negotiation. Chodos testified at trial that while discussing the price the city would be willing to pay for the plaintiffs' land, Frisch had stated that the price was immaterial, as the city would assess whatever the cost of acquisition was back against the remaining property of the plaintiffs.

The city purchased the land from the plaintiffs and paid them $5,975 in May 1968. The street improvement was completed in December 1968, for a total cost of $109,305.59. Since Reseda is a major highway, public gas tax funds of $59,683.42 were contributed toward the cost. The net amount, $49,622.17, was to be assessed, i.e., spread among the members of the assessment district.

The remaining portion of plaintiffs' property was included in the assessment district. Almost the entire cost of acquisition, $5,975, was assessed against plaintiffs' property; the assessment was $5,718.56, with the additional amount of $231.44 spread among certain lots on Arminta Street near Reseda which were deemed to have benefitted from the acquisition on Reseda. Such benefits are known as "district benefits." Plaintiffs were also assesesed $3,890.27 for their share of construction costs, with a total assessment of $9,608.83 out of the $49,622.17.

Plaintiffs accepted the construction assessment, but protested the assessment relating to acquisition. A public hearing was held by the Los Angeles City Council on June 30, 1969, at which time the council heard, considered and denied plaintiffs' protest. This suit ensued.

City Director of Assessments Liff testified at trial that the acquisition cost had been spread on a quarter block basis, i.e., the four quarter blocks converging at the intersection of Arminta and Reseda Boulevard, and that this was the uniform method used throughout the City of Los Angeles as it ensured that property owners were treated equally and were not assessed for acquisition costs in their area more than once. Liff denied that the particular assessment in this case had been predetermined. He described the assessment process as an individual matter, wherein the city had to determine subjectively and individually the amount of estimated benefit which would be derived from an improvement by each property owner involved. He testified that the city did have a policy of attempting to assess back to the property owner the cost of acquiring from that owner an easement necessary for the improvement to be made.

Liff further testified that property owners within the quarter-block area who had already dedicated and improved the street abutting Reseda Boulevard had been excluded from the assessment for acquisition costs, because it was determined that they had already contributed their fair share in this regard to the widening of the street. Plaintiffs were the only owners in the quarter-block district who had not dedicated their land previously, and thus the cost of acquisition fell largely on them.

There was testimony that the plaintiffs' property was zoned TR4 at the time the improvement was made; this was a tentative classification for apartment house use. The plaintiffs had offered the property for sale describing it in these terms. After the improvement project was completed, plaintiffs could confirm the classification as R4, for multiple residential use. Expert testimony was offered that had plaintiffs improved and dedicated their property in the same manner as their neighbors, they would have been compelled to expend at least $14,000 on the project.

Plaintiffs contended below, as they do on this appeal, that they did not wish the improvement; that they did not desire a zoning change. They further claim that their property was taken from them without due process of law, in violation of the Fifth Amendment to the United States Constitution and article I, sections 13 and 14 of the California Constitution, because it was predetermined by the City of Los Angeles that the cost of acquiring plaintiffs' property ultimately would be, and it was, assessed against the remainder of plaintiffs' property. Plaintiffs contend that the city took property for public use, pretending to pay just compensation with its left hand, while deliberately planning to take payment back with its right.

The trial court found that the assessment procedure employed by the defendant was not fraudulent or the result of bad faith, and that since the plaintiffs had actually received benefit to their property from the widening of Reseda Boulevard the assessment was justified. We find no error.

The right of the defendant to acquire, by dedication, purchase, or condemnation, property required for public improvements is not in issue here. ■ A special assessment is levied under the power of taxation, as distinct from the power to condemn property for a public purpose. (*Emery* v. *California Gas Co.*, 28 Cal. 345.) The issue before us is whether the assessment made by the city was the result of constitutionally permissible procedures as opposed to a predetermined policy executed in bad faith.

■ The major requirement for a valid assessment is that it must be made in proportion to the estimated benefits to be received by the land

affected thereby. (Sts. & Hy. Code, § 5343; *Halsted* v. *County of Sacramento,* 243 Cal.App.2d 584 [52 Cal.Rptr. 637]; *Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 24, 30 [148 P. 217]; *Cutting* v. *Vaughn,* 182 Cal. 151 [187 P. 19].) "[T]he compensating benefit to the property owner is the warrant, and the sole warrant, for the legislature itself to impose the burdens of these special assessments." (*Spring Street Co.* v. *City of Los Angeles,* cited *supra,* at p. 30.) "Benefit" has been defined as the "enhancement of the property's market value in relation to reasonably potential uses as well as present use." (*Auburn Lbr. Co.* v. *City of Auburn,* 258 Cal. App.2d 732, 737, 738 [66 Cal.Rptr. 58].)

It has long been held that an arbitrary, fixed policy of assessment back to the landowner without consideration of benefits on an individual basis is invalid, and a denial of due process to the landowner. (*Norwood* v. *Baker,* 172 U.S. 269 [43 L.Ed. 443, 19 S.Ct. 187]; *Spring Street Co.* v. *City of Los Angeles,* cited *supra; Dumas* v. *City of Sunnyvale,* 231 Cal. App.2d 796, 800 [42 Cal.Rptr. 302]; *City of Plymouth* v. *Superior Court,* 8 Cal.App.3d 454, 464 [96 Cal.Rptr. 636].)

■ In assessment disputes, the determination of the legislative body, i.e., the city council, on the question of benefit received by a landowner is conclusive, in the absence of fraud or an abuse of discretion deemed equivalent to fraud. (*Hanson* v. *Board of Trustees,* 74 Cal.App. 585, 590 [241 P. 572]; *Howard Park Co.* v. *City of L. A.,* 119 Cal.App.2d 515 [259 P.2d 977].)

■ In the instant case, plaintiffs apparently contend that there was no benefit to them as the result of the widening of Reseda Boulevard in front of their property because they neither desired the improvement nor the zoning change which was possible after the improvement was made. However, the determination of benefit cannot fairly be made on such a basis.

In *Howard Park Co.* v. *City of L. A., supra,* 119 Cal.App.2d at page 519, it was said: "We are constrained to hold that a special use to which property is put cannot be considered as affecting the amount of benefits, but that such amount is to be measured by the benefit which would be received by the property if devoted to any use which might reasonably be made of it. It would be inequitable and unfair to exempt particular property from an assessment when a special use is voluntarily made of it by the owner, and which he may change at any time so as to reap the benefits of an improvement that does not, at the time an assessment is made, benefit him because of a special use to which he has voluntarily put his prop-

erty." We think that the foregoing statement applies to the case before us. Plaintiffs' land, whatever special use they desired to make of it, was, after the improvement, ready for development as multiple residence land, in an area where other property had been developed for similar use; plaintiffs recognized that fact by offering the land for sale on that basis. Plaintiffs were benefitted by the improvement project, and the assessment was justified from a constitutional point of view.

Plaintiffs further contend that the method employed by the defendant city in spreading the acquisition cost, a method which resulted in plaintiffs' land bearing nearly the entire amount, constituted a taking without due process. Plaintiffs presented evidence that there was predetermination but the trial court rejected the inference that plaintiffs wished it to draw from that evidence.

Streets and Highways Code section 5360.3 provides that "In assessing the land within the district in proportion to the estimated benefits, an adjustment may be made because of the contribution made to the improvement by an owner, either past or present, who has donated land, or any interest in land, which otherwise would have had to be acquired by eminent domain or purchase, or who has done work at his expense which can be used as part of the improvement."

■ In determining the perimeters of the assessment district for acquisition cost, the defendant city used the quarter-block method, which has been recognized as a legitimate method of assessment (*Louisville & N.T.R. Co. v. Barber Asphalt Paving Co.*, 197 U.S. 430 [49 L.Ed. 819, 25 S.Ct. 466]; and see generally, 40 Cal.Jur.2d § 82, p. 429), and is uniformly employed throughout the City of Los Angeles because it is designed to place the burden of acquisition costs on those landowners who obtain substantial benefit from the acquisition only once.

The defendant then exempted from the assessment those landowners who had already borne costs of acquisition by dedicating and improving their land, who had, in effect, "paid in advance" their share of acquisition cost. (Sts. & Hy. Code, § 5360.3; see also, *Azzaro v. Board of Supervisors*, 273 Cal.App.2d 16, 19, 20 [77 Cal.Rptr. 692].) Plaintiffs, who contributed nothing to their neighbors' costs in this regard, would spread their acquisition cost in a manner resulting in their neighbors' paying twice. This would be an inequitable result.

Plaintiffs were thus left to bear the assessment substantially alone. Despite their claim that this result was predetermined, the trial court found

that the method employed by the city was employed in good faith without fraud. The record upholds that determination. Plaintiffs had their opportunity, both before the city council and the trial court to persuade them to the contrary, but failed to do so. We conclude that there was nothing unconstitutional about the assessment levied upon plaintiffs' land.

Judgment is affirmed.

Kingsley, J., and Dunn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 5, 1973.