[Civ. No. 19640. Second Dist., Div. One. Aug. 5, 1953.]

HOWARD PARK COMPANY (a Corporation) et al., Petitioners, v. CITY OF LOS ANGELES et al., Respondents.

Holbrook, Tarr & O'Neill for Petitioners.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, Alfred E. Rogers, Deputy City Attorney, and Roscoe R. Hess for Respondents.

WHITE, P. J.—Petitioners are the owners of a tract of land zoned for and being used for oil production purposes, a portion of the tract lying within the boundaries of a sanitary sewer district created pursuant to section 5000 et seq. of the Streets and Highways Code (formerly the Improvement Act of 1911), and known as the Athens Boulevard and Vermont

Avenue Sewer District. Meriwether Investment Company has bought or undertaken to buy bonds to be issued for the financing of a sewer system in the district.

Petitioners sought a writ of mandate, alleging that the assessments against their property for the construction of a sewer were erroneous, in that the City of Los Angeles Board of Public Works "failed to exercise the duties imposed upon it by law to make the said assessments in accordance with the 'benefits' received" and illegally delegated its authority. Upon filing of the petition and the returns and answers of the respondents thereto, this court issued its alternative writ of mandate, enjoining the city of Los Angeles, its officers and employees, and the city treasurer of Los Angeles, from taking any further proceedings or issuing any documents in support of the assessments against the property of petitioners, or proceeding with the issuance or delivery of any bonds in connection with such assessments, and directing that respondent Meriwether Investment Company desist from making any demands based upon the assessments complained of or from taking or receiving any bonds issued under such assessments.

Petitioners herein had previously filed a petition for a writ of mandate in the superior court, which petition was denied, as was a stay pending determination of an appeal taken from the order of the court below.

The parties in the proceeding just mentioned were not the same as in the instant proceeding. The treasurer of the city of Los Angeles is named in the present action, but was not a party to the foregoing superior court proceeding. We therefore regard it as within our province in the matter now engaging our attention to consider only the matters expressly set forth in the petition now before us, because the facts having to do with the superior court action should be considered and determined on the appeal taken from the order therein entered.

Petitioners' basic contentions, as set forth in their petition, are as follows: First, that the board of public works failed to comply with section 5343 of the Streets and Highways Code, in that said body did not assess against the lands of petitioners the cost of such improvement "in proportion to the estimated benefits to be received by each of the said several lots or parcels of land." (Sts. & Hy. Code, § 5343), but proceeded in accordance with the provisions of the cited code, sections 5315 to 5327, requiring that street assessments be spread "in proportion to the frontage." Second, that the board of public

works unlawfully delegated its powers and duties to employees of said board, to wit, employees in the bureau of assessments of the city of Los Angeles, who prepared an assessment list and diagram which was submitted to the board, and which list and diagram and the assessments thereunder were allegedly computed "illegally and erroneously and in violation of law by application in proportion to the frontage owned by each property owner in said district of the cost at a rate per front foot . . . of the work." That in accepting from its employees the assessment list and diagram and not making any independent investigation of its own, but approving the list and diagram as submitted, the board of public works illegally delegated its powers.

In answer to the alternative writ of mandate issued by this court respondents have, in addition to a return thereto, filed a demurrer urging that the petition for the writ herein does not state facts sufficient to constitute a cause of action for the issuance of the writ, and that the court is without jurisdiction of this action.

The cause having now been fully briefed and heard upon oral argument, the court has concluded that a peremptory writ of mandate should be denied and the alternative writ heretofore issued should be discharged.

■ Taking up first the contention that the board of public works (in its capacity as "Superintendent of Streets") unlawfully delegated its authority, in that the spreading of the assessment was made by an employee or employees of the city's bureau of assessments (specificially by a Mr. Creech), the answer to this argument is found in that, first, the members of the board could not be expected in person to do the work of spreading the assessment, nor is it contemplated by the law that they should do so. They approved and adopted the work of their subordinates, and thereby made the assessment the official act of the board. While the labor of preparing the assessment was borne by the employee, the board retained its discretionary power and judgment to approve, disapprove or modify the assessment. In a similar situation presented in *Rutledge* v. *City of Eureka*, 195 Cal. 404 [234 P. 82], the court said:

"It is apparent that the task of preparing the assessment here involved would have been impossible on the part of the respondent superintendent of streets without assistance. It is a matter of common knowledge that in large cities where street improvements are carried on extensively the work here

performed by Larson is done by an assistant skilled in the office of the superintendent of streets or of the lawfully constituted board, commission, or officer exercising his functions. In such circumstances it has never been held, as far as we are aware, that the superintendent of streets or the board, commission, or officer acting lawfully in his stead has relinquished or delegated the statutory power to make the assessment when it appeared, as it does in this case, that the power to act officially was not delegated or relinquished and the act required to be done by the statutory officer was actually performed by him. When the superintendent of streets signed the certificate to the assessment roll he adopted the work of Larson as his own. (See *Witter* v. *Bachman,* 117 Cal. 318 [49 Pac. 202].) And having made and authenticated the assessment in his official capacity, it would not be competent for the superintendent of streets to repudiate it. (*Hadley* v. *Dague,* 130 Cal. 207, 215 [65 Pac. 500].)''

With respect to the basic contention of petitioners, that the assessments of their lots were not made according to ''benefits,''—the logic of this contention would require that petitioners' lots not be assessed at all. Petitioners' argument is that the ''benefit'' to a parcel or lot is to be determined by ascertaining its market value before the improvement is made and determining its increased market value as a result of the improvement. Since petitioners' property is being used for oil production and there is no early prospect of its being converted to residence lots, the installation of the sewer would not enhance the value of the property as oil property. On the other hand, it is manifestly unfair that the property should escape assessment entirely merely because of the special use to which it is being put. It is to be remembered that the total benefit is to the district.

We are constrained to hold that a special use to which property is put cannot be considered as affecting the amount of benefits, but that such amount is to be measured by the benefit which would be received by the property if devoted to any use which might reasonably be made of it. It would be inequitable and unfair to exempt particular property from an assessment when a special use is voluntarily made of it by the owner, and which he may change at any time so as to reap the benefits of an improvement that does not, at the time an assessment is made, benefit him because of a special use to which he has voluntarily put his property.

Petitioners' contention that the assessment should be spread upon the basis of the amount of the increase in the market value is untenable, where, as in their case, the market value of their property was not affected by the improvement only because of the special use to which they had put it, and where such market value will remain unaffected only so long as such special and peculiar use continues. In the case of *Louisville & N. R. Co.* v. *Barber Asphalt Paving Co.*, 197 U.S. 430, 434 [25 S.Ct. 466, 49 L.Ed. 819, 821, 822], the Supreme Court of the United States had under consideration a situation where the railroad had a right-of-way for its main roadbed on a street which had the improvement of grading, curbing and paving. It was argued by the railroad that neither the right-of-way nor an adjoining lot would get any benefit from the improvement but on the contrary would be hurt by the increase of traffic close to the railroad tracks. With respect to the area method of special assessments, Mr. Justice Holmes, speaking for the court, said:

"There is a look of logic when it is said that special assessments are founded on special benefits, and that a law which makes it possible to assess beyond the amount of the special benefit attempts to rise above its source. But that mode of argument assumes an exactness in the premises which does not exist. The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land—indeed, whether it is a benefit at all—is a matter of forecast and estimate. In its general aspects, at least, it is peculiarly a thing to be decided by those who make the law. . . .

"A statute like the present manifestly might lead to the assessment of a particular lot for a sum larger than the value of the benefits to that lot. The whole cost of the improvement is distributed in proportion to area, and a particular area might receive no benefits at all, at least if its present and probable use be taken into account. If that possibility does not invalidate the act, it would be surprising if the corresponding fact should invalidate an assessment. Upholding the act as embodying a principle generally fair and doing as nearly equal justice as can be expected seems to import that if a particular case of hardship arises under it in its natural and ordinary application, that hardship must be borne as one of the imperfections of human things. And that has been the implication of the cases."

In *Butters* v. *City of Oakland*, 263 U.S. 162 [44 S.Ct. 62, 68 L.Ed. 228], there was involved an assessment under the Improvement Act of 1911 under the district plan, with assessments in proportion to the estimated benefits to be received by each parcel of land. It was urged that the costs might exceed the benefits, ". . . in which event the proportionate assessment of the estimated benefits may, in fact, be greater than the actual benefits received." The Supreme Court said: "The method of assessment provided for is an old and familiar one, and embodies a principle too well established to be overturned by the suggestion of a theoretical possibility that there may not be an exact and mathematical relation between cost and benefit in particular instances."

█ It is noteworthy that section 5343 of our Streets and Highways Code provides that assessments for special improvements are properly spread upon the basis of "the estimated benefits to be received by each of the said several lots or parcels of land," but the validity of the proceedings does not depend upon the ability to show that the benefit to the property included in the assessment district will be equivalent to the burdens (*Hanson* v. *Board of Trustees of Mill Valley,* 74 Cal.App. 585, 590 [241 P. 572]; *Butters* v. *City of Oakland, supra* (p. 228 L.Ed.).

In the case of *Hanson* v. *Board of Trustees of Mill Valley, supra,* at page 590, it was held that in the absence of fraud or such abuse of discretion as is equivalent to fraud, the determination of the city council on the question of benefits is conclusive. In the case at bar we find no showing that would warrant a finding of fraud or such abuse of discretion as would be the equivalent thereof. The need for public improvements, the creation of districts to finance them, and the spreading of assessments to cover the costs thereof, are primarily confided to the legislative branch of government.

The principal contention of petitioners is that no benefits would accrue to their property from the particular public improvement here in question. █ It is of course true that assessments such as the one with which we are now concerned are imposed on the theory that the property adjacent to the improvement and involved in the assessment district will receive special benefit. But this is a matter which is for the determination of the legislative authority of the municipality. The demands of due process are satisfied when the property owner has a right to be heard before the city

council upon the question, setting forth the reasons why the assessment should not be levied as ordered. Upon this the council must decide the question, and its decision is final unless the court can plainly see that manifestly and certainly no benefit can or could reasonably have been expected to accrue to the property in question. (*Duncan* v. *Ramish*, 142 Cal. 686, 692, 693 [76 P. 661].) With reference to a collateral attack in the courts upon the validity of an assessment, when the legislative body has acted in accordance with legal procedures, and where the ground of such attack is that the property of the particular individual was not benefited, the court in the case just cited, at page 691, had this to say:

"The statement of the proposition is almost sufficient to refute any argument in favor of it. It is manifest that if the taxing power is subject to review in this collateral manner, any exercise of it would generally be declared invalid. And such a rule would produce inequality and unjust discrimination, for, owing to the uncertainty of human judgment and the varying ability to array evidence in different cases, one person would frequently succeed in evading payment of his portion of the expenses, while another, similarly situated in all respects, would be compelled to bear his share of the burden. The practical effect of the doctrine would be to prevent all compulsory public improvement of every description where the means of payment of the expenses are to be obtained by local assessment. It is contrary to the decisions of this court as well as other authorities. . . . (citing authorities) . . .."

 An examination of section 5343 of the Streets and Highways Code at once reveals that while the test of benefits by comparison of the market value of the property before and after the improvement may be regarded as a fair test, it is not the exclusive test in arriving at "the estimated benefits to be received by each of the said several lots or parcels of land." We are persuaded that the correct rule is that if, from the nature of the improvement, it can be said that the lots to be assessed are susceptible to some substantial benefits from it—not depending upon any special use to which they are voluntarily presently being put, but if benefits would be received by the property if devoted to any use which might reasonably be made thereof—the question of the extent of the benefits received is one which, in the absence of fraud, gross injustice or demonstrable mistake, rests peculiarly in the determination of the assessing authorities, and their action will not be interfered with by the courts.

For the foregoing reasons, the demurrers of respondents are sustained, the alternative writ heretofore issued is discharged, and a peremptory writ is denied.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied August 26, 1953, and petitioner's application for a hearing by the Supreme Court was denied October 1, 1953. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.