419 P.2d 113

Herman WEITZ, Sofia Weitz, and Belle
Berenstein, Appellants,

v.

Lew DAVIS, individually, and as Mayor of
the City of Tucson, James Kirk, Thomas J.
Rallis, James M. Corbett, Jr., M. J. South-
ard, Kirk Storch and G. Freeman Woods,
individually and as members of the City
Council of the City of Tucson, V. M. TRE-
GONIS, individually and as City Engineer
of the City of Tucson, and the City of Tuc-
son, a municipal corporation, Appellees.

Samuel O. WITT and Winifred Q. Witt,
his wife, Appellants,

v.

CITY OF TUCSON, a municipal corporation,
Appellee.

Herman WEITZ, Sofia Weitz, Belle Beren-
stein, and Shopping Centers, Inc., an
Arizona corporation, Appellants,

v.

Lew DAVIS, individually and as Mayor of the
City of Tucson, James Kirk, Thomas J.
Rallis, James M. Corbett, Jr., M. J. South-
ard, Kirk Storch and G. Freeman Woods,
individually and as members of the City
Council of the City of Tucson, V. M. Tre-
gonis, individually and as City Engineer of
the City of Tucson, and the City of Tucson,
a municipal corporation, Appellees.

2 CA–CIV 179.

Court of Appeals of Arizona.

Oct. 5, 1966.

Rehearing Denied Oct. 27, 1966.
Review Granted Nov. 29, 1966.

Lesher, Scruggs, Rucker, Kimble &
Lindamood, by D. Thompson Slutes, Tuc-
son, for appellants.

Gordon S. Kipps, City Atty., Dwight E.
Eller, Asst. City Atty., Tucson, for ap-
pellees.

MOLLOY, Judge.

This is an appeal from judgments ren-
dered in favor of the defendant, City of
Tucson, in three civil actions consolidated
for trial, in which actions the plaintiffs
are challenging the assessment methods of
the City of Tucson in connection with
public improvements.

The improvements concerned in these
cases are the pavement, widening and
and drainage along East Broadway and
along Wilmot Road, two main arteries of
the defendant-city. The original com-
plaints filed challenged both the manner of
apportionment of the costs of these im-
provements among the various properties
fronting on the improvements and the fail-

ure of the City of Tucson to itself pay a percentage of the cost of the improvement inasmuch as the streets improved were traffic arteries serving the entire City of Tucson. On appeal, the contention that the city did not pay a portion of the cost has been abandoned, and in this opinion we are concerned only with whether the method used by the City of Tucson in spreading the cost of these improvements among the various property owners (plaintiffs) was illegal. The contentions are made that the method of apportionment used is in violation of equal protection and due process clauses of federal and state constitutions, is in violation of article 9, section 6, of the Constitution of the State of Arizona, A.R.S., and is in violation of either sections 9–617 or 9–686, A.R.S.

The case was submitted for the decision of the trial court on the basis of depositions taken and certain documentary evidence admitted by stipulation. The record discloses that until November 19, 1962, the City of Tucson had been apportioning the cost of public improvements under article 2, chapter 6, title 9, A.R.S., strictly on a front footage basis, with minor variations. On November 19, 1962, after a public hearing on the subject, the Mayor and Council of the City of Tucson adopted a recommendation of the City Manager contained in a "communication 1744" as a "general policy" to be followed by the Superintendent of Streets in the spreading of assessments for public improvements. The formula adopted is basically a front footage formula, but takes into account various factors, including (1) the type of street being improved, that is, whether it is arterial, a collector, a residential, an access road or an alley, (2) whether the construction proposed is for new construction or widening and/or reconstruction, (3) the use for which the property is zoned, that is, whether residential, apartment or commercial, (4) the location and shape of the property, that is, whether it is a corner lot, a double frontage lot, an irregularly-

shaped lot, or a service road frontage lot, and (5) the actual use being made of the property, that is, whether for nonconforming usage or for nonprofit purpose.

One portion of the formula provides that property zoned for apartment purposes shall be assessed at a rate of one and one-half times the basic residential rate and that property zoned for commercial purposes shall be assessed at a rate two times the basic residential rate. It is this portion of the formula that is selected for attack in the briefs filed with this court.

Depositions taken of the responsible city officials establish that while the policy contained in "communication 1744" is used as a guide, the final test used by these officials in determining assessments is to make a judgment as to what the benefits are to the particular property arising by reason of the work performed under the particular project. There is testimony that depending upon the usage of property, there is greater or less benefit arising from improvements such as these. There is testimony that, though the zoning of property is used as a guide, actual usage of the property is considered to be more important and that zoning classifications are sometimes disregarded.

The appellants appear unsure in their briefs as to whether the subject improvements were undertaken by the defendant-city under article 1, or under article 2, of chapter 6, title 9, A.R.S. The record discloses that both improvement projects were undertaken under article 2 of this chapter of our code. The applicable statute providing for the manner of apportioning the assessment is section 9–686, subsec. C, A.R.S., which reads as follows:

"C. The superintendent shall, as soon as the contractor has fulfilled his contract to the satisfaction of the superintendent, estimate on the lots fronting on the work when no district has been established, or, when a district has been established, upon the lots within the district, the benefits arising from the work

and projected to each lot. He shall thereupon make an assessment to cover the sum due for the work performed and specified in the contract, including incidental expenses, and shall assess upon and against the lots the total amount of the costs and expenses of the work. In so doing the superintendent shall assess the total sum upon the several lots, each respectively *in proportion to the benefits to be received by each·lot.*" (Emphasis added) A.R.S. § 9-686, subsec. C.

The appellants rely upon article 9, section 6, of the Arizona Constitution, which reads as follows:

"§ 6. Local assessments and taxes

"Section 6. Incorporated cities, towns, and villages may be vested by law with power to make local improvements by special assessments, or by *special taxation of property benefited.* For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes." (Emphasis added)

Appellants argue that this court should take judicial notice of the fact that properties can only be benefited on a strictly front footage basis from improvements such as these, and that therefore the method used by the City of Tucson, which considers other factors as well, is illegal, both under the applicable statute and the constitutional provision quoted above. No case law is cited to support such contention.

It appears to this court that the defendant City of Tucson is attempting, in a reasonable way, to carry out the express requirements of the applicable statute, which in turn seems to be in accordance with the quoted constitutional provision. The statute in question has its origin in California's Improvement Act of 1911, section 20, subdivision 10, p. 742, Statutes of California, 39th Session. The "benefit to property" concept embraced therein has been upheld as to constitutionality in Butters v. City

of Oakland, 263 U.S. 162, 44 S.Ct. 62, 68 L.Ed. 228 (1923).

■ The appellants argue that because applicable statutes provide for a right of protest as to a proposed improvement on a front footage basis, section 9-676, A.R.S., that therefore the cost of improvements must be assessed on a front footage basis. This seems to us to be a complete non sequitur. The right of protest is " * * * but a statutory privilege * * *," and not an inherent right, Stone v. City of Jefferson, 317 Mo. 1, 293 S.W. 780, 52 A.L.R. 879 (1927). Because the protest right is given at preliminary stages of the proceeding in question, when the detailed process of estimating the benefits to be received by the particular properties would not have been completed, it is understandable that the right of protest should be granted on a front footage basis. That it has anything to do with the subsequent statute providing for the apportionment of the costs of the improvement is an argument that this court has not been able to follow. There is no citation of authority and the contention is rejected.

■ The appellants have cited no authority whatsoever bearing upon their assertion that the policy used is a violation of due process and equal protection clauses of federal and state constitutions. The argument is made that zoning classifications are changed from time to time and that to use zoning as an absolute standard would be capricious. The record fails to disclose that zoning classifications are used as rigid standards and we are unable to assist the appellants by judicial notice. It seems to be common sense to this court that the zoning of property has some bearing upon the benefits to be received from public improvements such as those under discussion. In the absence of any evidence that the policy used by the city does not have reasonable relationship to the differences in benefit that the variously zoned property would receive from an improvement such as this, we have no hesitancy in

rejecting the contention that the subject policy violates constitutional mandates.

Judgments affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.