424 F.2d 168

**Herman WEITZ, Sofia Weitz, and Belle Berenstein, Appellants,**

v.

**Lew DAVIS, individually, and as Mayor of the City of Tucson, James Kirk, Thomas J. Rallis, James M. Corbett, Jr., M. J. Southard, Kirk Storch and G. Freeman Woods, individually and as members of the City Council of the City of Tucson, V. M. Tregonis, individually and as City Engineer of the City of Tucson, and the City of Tucson, a municipal corporation, Appellees.**

**Samuel O. WITT and Winifred Q. Witt, his wife, Appellants,**

v.

**CITY OF TUCSON, a municipal corporation, Appellee.**

**Herman WEITZ, Sofia Weitz, Belle Berenstein, and Shopping Centers, Inc., an Arizona corporation, Appellants,**

v.

**Lew DAVIS, individually and as Mayor of the City of Tucson, James Kirk, Thomas J. Rallis, James M. Corbett, Jr., M. J. Southard, Kirk Storch and G. Freeman Woods, individually and as members of the City Council of the City of Tucson, V. M. Tregonis, individually and as City Engineer of the City of Tucson, and the City of Tucson, a municipal corporation, Appellees.**

**No. 8884–PR.**

Supreme Court of Arizona.

In Banc.

Feb. 24, 1967.

Rehearing Denied March 28, 1967.

Lesher, Scruggs, Rucker, Kimble and Lindamood, by D. Thompson Slutes, Tucson, for appellants.

Gordon S. Kipps, City Atty., Dwight E. Eller, Asst. City Atty., Tucson, for appellees.

UDALL, Justice.

Plaintiffs in three civil actions consolidated for trial challenged the methods of assessments for improvements made by the City of Tuscon against the plaintiffs' properties. Plaintiffs sought to recover monies paid under protest pursuant to said improvement assessments and a reassessment on a frontage basis. The case was submitted for the decision of the trial court on the basis of depositions taken and certain documentary evidence admitted by stipulation. The Superior Court of Pima County entered judgments in favor of the City of Tucson and the Court of Appeals, Division Two, affirmed. This matter is now before us by a petition to review the decision of the Court of Appeals reported in 4 Ariz. App. 209, 419 P.2d 113.

The facts in this case are simple and undisputed: The City of Tucson, hereinafter referred to as defendant, under Title 9, Ch. 6, Art. 2, A.R.S., as amended, established two improvement districts for pavement, widening and drainage along East Broadway and along Wilmot Road.

It appears that prior to November 19, 1962, the defendant had been apportioning the cost of improvements on a front footage basis. However, on November 19, 1962, a public hearing was held, at which the Mayor and City Council of Tucson approved by motion that thereafter the Superintendent of Streets should follow, as a general policy, a certain formula in the apportioning of the cost of public improvements. Said formula, which was recommended by the City Manager, is, as described by the Court of Appeals in its opinion, "basically a front footage formula, but takes into account various factors, including (1) the type of street being improved, that is, whether it is arterial, a collector, a residential, an access road or an alley; (2) whether the construction proposed is for new construction or widening and/or reconstruction; (3) the use for which the property is zoned, that is, whether residential, apartment or commercial; (4) the location and shape of the property, that is, whether it is a corner lot, a double frontage lot, an irregularly-shaped lot, or a service road frontage lot; and (5) the actual use being made of the property, that is, whether for nonconforming usage or for nonprofit purpose."

The Superintendent of Streets used the above formula as a general guide in assessing the lots within the subject improvement districts, with the result that the properties of the plaintiffs were assessed for greater

portions of the cost of the improvements than they would have been had the assessment been apportioned solely on the basis of the ratio of each of said properties' respective front footage to the total front footage in the respective district, without consideration of their commercial use and zoning.

There are two questions presented to us for review. The first is, may the defendant assess properties in an improvement district on other than a frontage basis? The second is, may the defendant determine the value of the benefit of an improvement for assessment purposes on a zoning classification and the use of the property basis when assessing taxes for an improvement assessment? In this opinion, we propose only to reach the questions presented by plaintiffs and do not by implication necessarily pass upon the constitutionality of any other portion of title 9, Chap. 6, Art. 2, A.R.S., as amended.

■ One: It is settled law that a legislative or other body acting under its authority may adopt any of several methods of apportioning assessments to pay for improvements, among which are apportionment according to districts or zones, area, frontage, value, or estimated benefits to property assessed. See generally, 63 C.J. S. Municipal Corporations §§ 1423 to 1435; 14 McQuillin, Municipal Corporations, (3rd Ed.) §§ 38.121 to 38.130. However, in a jurisdiction where the method of apportionment is provided by statute, the statutory method must be followed and the use of any other method than that so provided will ordinarily invalidate the assessment. Towers v. City of Tacoma, 151 Wash. 577, 276 P. 888; Carton v. Borough of Neptune City, 16 N.J.Misc. 5, 196 A. 672.

The manner of apportioning assessments for such improvement districts as involved herein is provided by statute in this state, the applicable statute being A.R.S. § 9–686, subsec. C, which reads in pertinent part as follows:

"C. The superintendent shall * * * estimate * * * upon the lots within the district, the benefits arising from the work and projected to each lot. He shall thereupon make an assessment to cover the sum due for the work performed and specified in the contract, including incidental expenses, and shall assess upon and against the lots the total amount of the costs and expenses of the work. In so doing the *superintendent shall assess the total sum upon the several lots, each respectively in proportion to the benefits to be received by each lot*." (Emphasis added.)

It is obvious that the above statute embraces the so-called "benefits to property" method of assessment. On the other hand, the frontage method of assessment is generally stated to be:

"* * * (A) method by which the entire cost of an improvement, or such part thereof as is assessed against abutting property, is imposed on, and apportioned to, abutting property according to the frontage thereof on the improvement." 63 C.J.S. Municipal Corporations § 1428, at 1216.

■■ It is clear from a comparison of A.R.S. § 9–686, subsec. C and the statement of the frontage method above that the benefits to property method and the frontage method are separate and distinct means of assessment. Nevertheless, the frontage method is sometimes a convenient method for estimating the benefits to property and may result in a practical adjustment of proportional benefits. However, since the front foot rule is merely an approximate method of measuring benefits, it is well established that when apportionment according to benefits is required by statute the frontage method should not be applied where its application would result in an assessment in substantial excess of benefits, or where it would not be a fair standard by which to measure benefits. English v. Territory of Arizona, 214 U.S. 359, 29 S.Ct. 658, 53 L.Ed. 1030. Therefore, it is apparent that defendant herein may assess properties in an improvement district on other than a frontage basis and indeed must under certain circumstances.

Two: A portion of defendant's formula for determining the value of benefits to be derived by a lot from an improvement reads:

"I.C. *Benefit categories*

1. *Residential Property:*

Property zoned R-1 (one family), or R-2 (small rental units.)

2. *Apartment Property:*

Property developed for multiple occupancy and/or limited commercial use permissible in zoning categories R-3 and R-4, and property with an R-1 or R-2 classification on which apartments are located as a non-conforming use.

3. *Commercial Property:*

Any property not included in the residential classification R-1 thru R-4 and property on which is located a non-conforming commercial use.

\*   \*   \*   \*   \*   \*

"II.B. *Residential and Non-Profit Property*

1. As a general principle, all property of this classification will be assessed no more than the current average cost per front-foot of a standard residential street pavement. This front-foot assessment rate shall be known and hereafter referred to as the "basic residential rate." (Presently, this is averaging $8–$10.)

\*   \*   \*   \*   \*   \*

C. *Apartment and Commercial Property*

1. Apartment properties shall be assessed at a rate one and one-half (1½) times the basic residential rate.

2. Commercial property shall be assessed at a rate two (2) times the basic residential rate."

■ Plaintiffs contends that basing assessments on existing zoning is capricious and arbitrary because zoning laws are continually undergoing change and have no legal basis for determining the benefit received from any public improvement and that therefore the use of the formula violates the due process and equal protection clauses of the federal and state constitutions. We do not agree with plaintiffs' contention. There is no doubt that assessments for local improvements must be fairly and justly apportioned among those charged with their payment. A method of apportionment that is manifestly arbitrary or discriminatory does not fulfill the constitutional requirement of due process and equal protection. But, there never has been and probably never will be a perfectly equitable distribution of the assessment burden, so statutes or methods for the apportionment of assessments are not to be stricken down merely because they "fail to attain the unattainable". All that is required of them by constitutional law is that they apportion the burden of assessments with approximate equality, upon a reasonable basis of classification, and with due regard to the benefits to the individual property owners.

It was said In Re Eight and One-Half Mile Relief Drain, 369 Mich. 641, 120 N.W. 2d 789, at 793:

"Where the rule of apportionment is according to the special benefits derived, the application of that rule may be effected by the employment of any method which will accomplish that purpose, whether it be by valuation, frontage, superficial area, or any other method which does not lose sight of the fundamental basis of special assessments for local improvements. \* \* \*"

■ It is common knowledge that the general purpose of zoning laws is to promote the general welfare by providing a more stable environment for the orderly development of communities. In other words, zoning may be said to be a means of strengthening the character of a particular area in terms of its use, rather than weakening it. It follows logically from such a concept that a rezoning of a particular

area will not as often be brought about as plaintiffs claim, especially if the character of the area is already well established. Since the record discloses no evidence to the contrary, we must assume that the character of the area in which plaintiffs properties are located is well established and that therefore, there is little likelihood of a change in the zoning of the area.

 Furthermore, it has long been recognized that residential and commercial properties may be differently treated in apportioning an assessment. Pinkus v. Incorporated Village of Hempstead, Sup., 225 N.Y.S.2d 959; People ex rel. Howlett et al. v. Mayor, etc., of City of Syracuse, 63 N.Y. 291. Obviously, the rationale behind such a distinction when making assessments for a paving improvement is that those properties contributing to and benefiting from heavier traffic should make a greater contribution toward the improvement. Since the use to which property may be put is normally determined by its zoning classification it is also obvious that the benefits a property receives from a public improvement are tied to the zoning factor. This concept has received recognition in those cases wherein the property assessed is a vacant lot or is presently being put to a special use which is not the highest and best use which may reasonably be made of it under its zoning classification.

In Howard Park Co. v. City of Los Angeles, 120 Cal.App.2d 242, 259 P.2d 977, the petitioner was using his property for oil production at the time a sewer improvement was made. Petitioner challenged the assessment made against his property on the ground that he received no benefits from the improvement; he claimed there was no early prospect of his property being converted to residence lots. The court said at page 980:

"We are constrained to hold that a special use to which property is put cannot be considered as affecting the amount of benefits, but, that such amount is to be measured by the benefit which would be received by the property if devoted to any use which might reasonably be made of it. It would be inequitable and unfair to exempt particular property from an assessment when a special use is voluntarily made of it by the owner, and which he may change at any time so as to reap the benefits of an improvement that does not, at the time an assessment is made, benefit him because of a special use to which he has voluntarily put his property."

We are of the opinion that the logic of the Howard case is sound and by adoptive analogy is controlling in the instant case. We hold therefore that the zoning classification of property is a proper factor to consider in determining the benefits such property will receive from a public improvement for assessment purposes.

The judgments appealed from are affirmed.

BERNSTEIN, C. J., McFARLAND, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.