545 P.2d 992

**TOWN OF PEORIA, a Municipal Corporation, Appellant,**

v.

**Richard HENSLEY and Dorelle Ann Hensley, his wife, Appellees.**

**No. 1 CA–CIV 2449.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 10, 1976.

Perry & Head, by Dale A. Head, Phoenix, for appellant.

Lindauer & Logan, P. A., by Thayer C. Lindauer, Phoenix, for appellees.

Johnson, Shelley & Roberts by J. LaMar Shelley, Mesa, for League of Ariz. Cities and Towns.

## OPINION

JACOBSON, Presiding Judge.

This appeal questions the rights of the courts to determine the amount of "benefits" derived from a town sewer improvement district and reduce the amount of assessments accordingly.

The first time that this matter was before this court is reported in *Hensley v. Town of Peoria*, 14 Ariz.App. 581, 485 P. 2d 570 (1971). There we set aside the summary judgment in the town's favor because we found two genuine issues as material facts raised by A.R.S. § 9–686, namely, whether the Town of Peoria used an improper method for computing appellee's property assessment within the district by using the "front foot" method rather than the "benefit" method; and whether the appellees could benefit from the sewer district at all, since their property was zoned rural and so used. Appellant's property consists of an unimproved parcel approximately 165 feet in width and 1,284 feet in length. The sewer line which gave rise to the assessment runs the entire length of appellant's west boundary line.

On remand and trial, the court determined that the "benefit" method was utilized by the town in fixing the assessments generally in the district and that in fact this particular property derived a benefit from the sewer district notwithstanding the property was zoned rural. However, the trial court further found that the assessment as to appellees' property did not comply with the statutory requirements of the assessment in proportion to the benefit to be received. The result of this determination was to reduce the assessment on appellees' property from an amount based upon a lot depth of 135 feet as found by the town council to a lot depth of 94 feet, thus cutting appellees' assessment by $1,839.03. The town has appealed.

The question squarely presented is whether the trial court having found appellant's property to have received a benefit from the formation of the sewer district and thus properly included in the district, may also determine the amount of the "benefit" that the property derived contrary to the action of the town determining what that "benefit" was.

The statutory scheme for initially assessing property in a special improvement district falls upon the superintendent of streets of the town. A.R.S. § 9–686(C) provides:

"The superintendent shall, as soon as the contractor has fulfilled his contract to the satisfaction of the superintendent, estimate . . . upon the lots within the district, the benefits arising from the work and projected to each lot. He shall thereupon make an assessment to cover the sum due for the work performed and specified in the contract, including incidental expenses, and shall assess upon and against the lots the total amount of the costs and expenses of the work. In so doing the superintendent shall assess the total sum upon the several lots, *each respectively in proportion to the benefits to be received by each lot.*" (emphasis added)

The power delegated to the superintendent to fix the assessment "in proportion to the benefits to be received", is subject to

review by the common council of the town. A.R.S. § 9–687(F). This review procedure was exercised in this case and the common council of the Town of Peoria at a hearing upheld the assessment by the superintendent and found the "benefits to be received" by appellant's land extended to a depth of 135 feet.

The determination as to the special benefits to be received by a particular lot within the improvement district is generally conceded to be a legislative function of the common council of the town. *Brock v. Lemke,* 51 Haw. 175, 455 P.2d 1 (1969); *State ex rel. Londerholm v. City of Topeka,* 201 Kan. 729, 443 P.2d 240 (1968); *Chicago & North Western Ry. Co. v. City of Riverton,* 70 Wyo. 84, 246 P.2d 789 (1952); *See, Weitz v. Davis,* 102 Ariz. 40, 424 P.2d 168 (1967).

Being a legislative determination, such a determination is conclusive "and not subject to review by the courts unless it clearly appears that the determination was based on erroneous principles of law, or was . . . arbitrary, corrupt, fraudulent, or a manifest abuse of legislative authority, . . . or unless the assessment so far transcends the limit of equality that its execution will become extortion and confiscation . . .." 63 C.J.S. Municipal Corporations § 1375, pp. 1138–39.

The dissent in this matter seems to indicate that there is a difference in the judicial review accorded the function of the city council in establishing the improvement district on the one hand and the finding by the council that benefits were bestowed on the other hand. In the opinion of the majority, neither the statutes nor the case law cited in the dissent supports such a distinction.

Appellants do not seriously argue with the applicable principles of law, but contend that whether the action is arbitrary or discriminatory (transcends the limit of equality) is a fact question for the court. Appellants further point out that the facts presented to the trial court would support its determination that the highest and best use of appellees' property was to sub-divide it into 17 residential lots and since the · sub-division property adjoining appellees' property was divided into 17 lots having a depth of 94 feet, the reduction of appellees' projected lots to 94 feet is factually supportable. We agree that there are facts in the record which would support the trial court's *opinion* as to the benefits derived from the special improvement district. However, the test is not whether the trial court's opinion is supportable, the test is whether the common council's opinion is supportable, that is, not arbitrary, fraudulent or discriminatory.

We believe the trial court was correct in arriving at the determination of benefits to be bestowed, to consider the appellees' property as "if devoted to any use which might reasonably be made of it," *Howard Park Co. v. City of Los Angeles,* 119 Cal.App.2d 515, 259 P.2d 977 (1953), quoted with approval in *Weitz v. Davis, supra,* rather than the present use. However, the power of the court to consider, as with the common council to consider, the anticipated "highest and best use" does not give to the court the power to substitute its opinion as to what that highest and best use might be for the opinion of the legislative body empowered by statute to make that determination. As was stated in *Chicago & North Western Railroad Co. v. City of Riverton, supra:*

"However, values and benefits are matters of opinion, and it may be that since the taxing power is legislative, the legislature's opinion is as good as any, or better." 246 P.2d at 801.

Appellees further argue that the only evidence presented shows that the highest and best use of appellees' property is 17 residential lots and since the sub-division adjoining this property is only assessed to the depth of 94 feet (the actual size of the lots in the adjoining subdivision) to assess their anticipated lots at a depth of 135 feet results in discrimination. Assuming we agree with appellees' argument that the only evidence presented

shows the highest and best use to be 17 residential lots, this does not mean that those lots could not be 135 feet deep and that the benefit would not reach their entire depth. Discrimination does not result from assessing one lot to a depth of 135 feet and another lot to only 94 feet. Discrimination results if one lot 135 feet in depth is only assessed to a depth of 94 feet and yet another lot of 135 feet is assessed to its full depth. The evidence does not support this type of discrimination.

■ We, too, have viewed the evidence and the plot plan of the improvement district. In doing so, we could reasonably conclude, or more properly put, we could determine the common council of the Town of Peoria could reasonably conclude that the reasonable use of appellees' property would be residential lots having a depth of 135 feet and that by reason of this size and thus expanded use, would derive more benefit from the sewer line than a lot of 94 feet in depth. Having determined that the common council's conclusion is reasonable, we must find that it was not arbitrary, fraudulent or discriminatory and thus it must stand.

As was stated in *Weitz v. Davis, supra*:

"But, there never has been and probably never will be a perfectly equitable distribution of the assessment burden, so statutes or methods for the apportionment of assessments are not to be stricken down merely because they 'fail to attain the unattainable.' All that is required of them by constitutional law is that they apportion the burden of assessments with approximate equality, upon a reasonable basis of classification, and with due regard to the benefits to the individual property owners." 102 Ariz. at 43, 424 P.2d at 171.

For the foregoing reasons, the judgment of the trial court is reversed and the matter remanded with directions to enter judgment for the Town of Peoria upon appellees' complaint.

HAIRE, C. J., Division 1, concurs.

EUBANK, Judge (dissenting).

I dissent because in my opinion the majority has entirely misconstrued the findings and judgment of the trial court.

This matter was returned to the trial court in *Hensley v. Town of Peoria*, 14 Ariz.App. 581, 485 P.2d 570 (1971) because we found that summary judgment was improperly granted. We held that two genuine issues as to material facts were raised by A.R.S. § 9–686, namely, whether Peoria used an improper method for computing appellees' property assessment within the district by using the "front foot" method rather than the "benefit" method; and whether the appellees could benefit from the sewer district at all, since their property was zoned rural or agricultural and was so used.

On remand the matter was tried to the court sitting without a jury; and following the hearing the court entered its findings and judgment reducing the assessment against appellees' land from $6,439.15 to $4,600.12, a reduction of $1,839.03. The city appeals from this judgment, contending that the Superior Court does not have the authority to reduce the assessment; the majority agrees and holds, in effect, that as a matter of law, only the City Council, as a legislative matter, can change the assessment.

The City's specific question on appeal is that:

The trial court erred in reducing appellees' assessment inasmuch as the final decision of a municipal government in establishing an improvement district is conclusive as a matter of law. The recognized exceptions to this rule have no application to the case at bar.

This question mixes two entirely different matters: (1) the legislative decision to create an improvement district, and (2) the act of setting the assessments

within the district sometime later. As to the first point, the decision to establish an improvement district, when authorized by law, has been viewed as a legislative function not subject to review by the courts, except for "fraud or arbitrariness." *Cf. Gillard v. Estrella Dells I Improvement Dist.,* 25 Ariz.App. 141, 541 P.2d 923 (1975); *Citizens Utilities Water Co. v. Superior Court,* 108 Ariz. 296, 497 P.2d 55 (1972), cert. den. 409 U.S. 1022, 93 S.Ct. 462, 34 L.Ed.2d 314 (1972). As to the second matter, our law has always provided a means by which a specific assessment could be questioned and reviewed. *See Weitz v. Davis,* 102 Ariz. 40, 424 P.2d 168 (1967). The authority to adjust the assessment, I believe, is provided for by the Uniform Declaratory Judgments Act (A.R.S. § 12–1831 et seq.) and by A.R.S. § 9–689,[1] and is implied from A.R.S. § 9–707.[2] Consequently, I would initially answer the question raised by appellant by agreeing that, within the limits stated,

the final decision of the City to establish a local improvement district is a legislative decision which is conclusive on the courts, except for "fraud and arbitrariness." *See Citizens Utilities Water Co. v. Superior Court, supra.* The assessments, however, are another matter. They are subject to judicial review when properly challenged and where constitutionally defective. *See Weitz v. Davis, supra.*

The trial court in its Memorandum Opinion And Order answered the first question on remand in the negative, and the second with a qualified affirmative, that is (1) that Peoria used a square footage method where no parcel was being assessed for a depth greater than 135 feet and therefore did not use the "benefit method," and (2) that the appellees could benefit from the sewer district, but to a very limited extent, indeed. The trial court attempted to demonstrate these con-

1. Invalidity of liens or bonds; extent of validity; means to secure interest of persons damaged

A. If the lien of an assessment or reassessment, or of a bond issued to represent the amount assessed on any lot is held invalid by a court because a portion of the improvement ordered was without the power of the governing body to order, or was not properly embraced within the contract for the work, or in the assessment made to cover the expenses, the owner of the warrant or the holder of the bond is entitled to a judgment determining what portion of the assessment was legal. There shall thereafter be issued to him by the superintendent within sixty days, and in accordance with the directions of the judgment, a new assessment for an amount which the court finds was the reasonable value of the portion of the improvement legally authorized by the proceedings, which amount shall be reassessed upon the property in the same manner and with like effect as provided for issuing the original assessment, and may be enforced as an original assessment. The holder of bonds representing the original assessment shall be entitled to new bonds on each lot representing the amount of the reassessment.

B. If the lien of an assessment, or of a bond issued therefor, is held invalid by a court for any cause arising subsequent to the time the authority of the governing body attaches

to order the work, or when the lien is defeated or held invalid for any cause, and it also appears that the owner of the property, holding it at the time the notice of the award of contract was published, had personal knowledge of the intention to order award of the contract, and has not filed a protest against the improvement or a notice of his objection to the award of contract, the owner of the assessment or bond may recover from the owner of the lot covered by the assessment such sum as the court shall find the lot to have been actually benefited by the improvement, not exceeding the amount which would have been properly assessable against the lot.

2. Procedure when assessment declared void

A. When the assessment on a lot levied for the improvement, or part thereof, or the entire assessment, is adjudged void for any reason, the governing body shall cause to be levied and assessed upon the lot on which the assessment has been held boid, or upon all the lots included within the limits assessed for the work, a new assessment sufficient to provide for the payment of principal and interest on all bonds then unpaid. The reassessment shall be made as nearly as practicable in the same manner, and with like effect, as the original assessment.

B. In case of partial deficit the governing body may pay the deficit from the general fund.

clusions by comparing appellees' land, which was zoned agricultural, with a platted residential subdivision within the district, which adjoined the property and which was separated from it only by the alley along which the sewer line ran. The following demonstrates clearly to me that the assessment was *not* based on a fair standard of benefits but on a square foot basis:

|  | | SUBDIVISION | APPELLEES'<br>AGRICULTURAL LAND |
|---|---|---|---|
| 1. | Zoning: | Residential | Agricultural |
| 2. | Housing: | One per lot (17 lots) | One for the entire parcel<br>(1 lot) |
| 3. | Sewer con-<br>nections: | One per lot (17 lots) | One for the entire parcel<br>(1 lot) |
| 4. | Depth of<br>assessment: | 94 feet | 135 feet |
| 5. | Assessment: | $4600.12 (17 lots) | $6,439.15 (1 lot) |

———◆———

It is clear to me that the assessments benefit the subdivision to a far greater degree than they do the agricultural parcel of land.

The trial court's findings are as follows:

The Town of Peoria established an improvement district for the purpose of installing a sewer system along certain streets, alleys and easements within the town. The property of the plaintiffs [appellees] was included within the district and was assessed for a portion of the cost of the improvement. Plaintiffs' [appellees'] property is rectangular in shape with frontage of about 165 feet on Peoria Avenue and a depth [running north] of about 1,284 feet. It is unimproved and it is used for agricultural purposes. It is zoned for agriculture [sic] uses. One residence could be constructed on the property. Alfred Raisor, an expert witness presented by plaintiffs, [appellees] testified that the highest and best use of plaintiffs' [appellees'] property was probably for residential purposes.

The plaintiffs [appellees] brought this action for declaratory judgment alleging that their property should have been excluded from the assessment because it was zoned for agricultural uses and could not benefit from a sewer system and because the town used an improper method for computing the amount of the assessment. Whether property will be benefited by an improvement is not dependent upon the use to which the property is presently being put but is dependent upon whether there would be a benefit if the property were devoted to any use which might reasonably be made of it. See *Weitz v. Davis*, 102 Ariz. 40, 424 P.2d 168. It appears that plaintiffs' [appellees'] property might reasonably be used for residential purposes. Therefore it was not improper to include it in the district assessment.

The plaintiffs [appellees] allege in their complaint that the town used the front footage method for computing property assessments within the district. However, the evidence was that a square footage method was used with no parcel being assessed for a depth in excess of one hundred and thirty-five feet. With respect to plaintiffs' [appellees'] property, it appears that the 165 feet of frontage on Peoria Avenue was assessed on the basis of a depth of 135 feet. The balance of plaintiffs' [appellees'] proper-

ty (1,284 feet minus 135 feet) was then assessed on the basis of a depth to 135 feet. The total assessment was $6,439.19 [sic].

Abutting plaintiffs' [appellees'] property on the west [across an alley] are seventeen residential lots. The assessments on these lots totaled $4,600.12.

The statute requires that the total amount of the cost and expenses of the improvement shall be assessed "upon the several lots, each respectively in proportion to the benefits to be received by each lot." A.R.S. 9–686C [sic].

In *Weitz v. Davis*, the Arizona Supreme Court said:

"There is no doubt that assessments for local improvements must be fairly and justly apportioned among those charged with their payment. A method of apportionment that is manifestly arbitrary or discriminatory does not fulfill the constitutional requirement of due process and equal protection. But, there never has been and probably never will be a perfectly equitable distribution of the assessment burden, so statutes or methods for the apportionment of assessments are not to be stricken down merely because they 'fail to attain the unattainable'. All that is required of them by constitutional law is that they apportion the burden of assessments with approximate equality, upon a reasonable basis of classification, and with due regard to the benefits to the individual property owners." Page 43 [424 P.2d p. 171].

It is clear that due regard has not been given to the benefits to be realized by plaintiffs [appellees] from the sewer system. Granted that plaintiffs [appellees] might subdivide their property for residential uses, it is clear that under the town's master zoning plan plaintiffs [appellees] could not subdivide their property into more than seventeen lots. While the lots adjoining plaintiffs' [appellees'] property are about ninety-four feet in depth, it is fallacious to assume that increasing the depth of a lot to 135 feet would result in additional benefits from the sewer system. The type of dwelling which would be constructed on a 135 foot lot would not differ materially from one on a 98 foot lot. In the court's judgment the assessments of benefits to plaintiffs' [appellees'] property on a pure square footage basis without giving consideration to the fact that the maximum residential use would be no more than seventeen lots is discriminatory.

In *Weitz v. Davis, supra*, our Supreme Court recognized that benefits of the improvement district must be "fairly and justly apportioned among those charged with their payment" and that "[a] method of apportionment that is manifestly arbitrary or discriminatory does not fulfill the constitutional requirement of due process and equal protection." It is clear to me that the trial judge applied the *Weitz* standard and found that the benefits, when compared to those enjoyed by the adjoining subdivision, were discriminatory to the extent of the assessed difference between the two. Admittedly, this was a practical solution based on the evidence in the record, because, as a matter of fact, appellees' land is *not zoned residential* and to treat it as such merely reduces the real discrimination that appellees have suffered; its does not remove it.

I would affirm the trial court's judgment on the basis of A.R.S. § 9–689, *supra*. This statute provides that if the lien of an assessment is held to be invalid by a court because a portion of the improvement was not properly embraced within the contract for the work, the owner of the warrant shall be entitled to a judgment determining what portion of the assessment was legal. A construction that discriminatory benefits constitute "a portion of the improvement . . . not properly embraced within the

contract" agrees with the underlying rationale of *Weitz* and the findings of the trial court. Surely, the majority's answer to the problem is no answer at all.

The judgment should be affirmed.