897 P.2d 638

Anthony CONYERS, Plaintiff–Appellee,

v.

CITY OF PRESCOTT, a municipal corporation, Defendant–Appellant.

No. 1 CA–CV 92–0273.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 11, 1994.

Reconsideration Denied Dec. 20, 1994.

Review Denied June 29, 1995.

Baker & Baker by Wallace J. Baker, Jr. and Thomas M. Baker, Phoenix, for plaintiff-appellee.

City of Prescott Legal Dept. by Ralph Matthew Hess, Prescott, for defendant-appellant.

## OPINION

McGREGOR, Judge.

The City of Prescott (City) appeals from the trial court's order granting summary judgment in favor of Anthony Conyers in an action challenging the legality of a sewer system assessment. The issue on appeal is whether the trial court erred in concluding that the City's calculation of Conyers' portion of the assessment was unfairly discriminatory and thus unconstitutional. Because the record supports the City's finding that Conyers' share of the assessment is proportional to the benefits he receives from the sewer system, we reverse the trial court's order and remand the matter with directions to enter judgment for the City.

### I.

Conyers owns two separate but adjoining parcels of land in the Granite Heights area of the City. One parcel is approximately 1.81 acres and the other is approximately 0.35 acres. When combined, the two parcels exceed 90,000 square feet. Roughly half of each parcel is within a commercial property zone, while the other half is within a residential zone.

On June 14, 1988, the City formed the Granite Heights Improvement District to construct a sewer system that would connect the Granite Heights area to the existing municipal sewer system. In addition to Conyers' property, five other parcels lie within the improvement district. Of those, three are zoned residential and two are zoned commercial. The parcels vary in size from 10,428 square feet to 15,804 square feet.

To apportion the cost of the sewer system, the City assigned each parcel within the district a number of "benefit(s)." The City defined a "benefit" as "a legal lot for a single residence," which in the Granite Heights area requires 9,000 square feet. In calculating the number of benefits, the City reasoned that "[i]f a lot has sufficient area to provide for more than one legal lot, that parcel's benefit would be increased according to the number of legal lots the parcel could be divided into."

After assigning each parcel a number of benefits, the City divided the cost of building the sewer system by the total number of benefits within the improvement district. The City then assessed each landowner based on the number of benefits assigned to the landowner's parcel or parcels.

Initially, the City informed Conyers that it would assign his larger parcel eight benefits and his smaller parcel one benefit. Subsequently, the City notified Conyers that it planned to combine his parcels for assessment purposes because he could develop the tracts together.[1] As a result, the City assigned Conyers ten benefits.

After receiving the contractor's bid, the City formally adopted an assessment charging each property owner in the improvement district $5,530.93 per benefit. On December 5, 1989, the City notified Conyers that his assessment was delinquent and that it would initiate remedial action if he failed to pay his delinquent installment, penalties, and an advertising fee by January 5, 1990. Conyers, who had not objected to any of the City's earlier communications, filed a protest contesting the City's apportionment of the sewer assessment. The City agreed to hold a public hearing on February 13, 1990 to consider Conyers' objections.

At the hearing, Conyers testified and presented the testimony of James Purvis, a local real estate broker, and Harlan Gellhaus, a civil engineer. The City presented the testimony of Robert Kirkpatrick, an engineer in the Public Services Department, Garrett TerBerg, the Director of Planning & Zoning, and Richard Straub, the Director of Public Services. On February 20, 1990, the city

---

1. In ruling on the City's motion for summary judgment, the trial court found that the City did not violate A.R.S. section 48–589.C (1988) by combining Conyers' "commonly owned and adjacent parcels" for assessment purposes. Because Conyers does not contest this finding on appeal, we do not address this issue.

council sustained the City's assessment against Conyers.

Conyers initiated this action on March 1, 1990, seeking declaratory and injunctive relief. On April 2, 1990, Conyers filed an amended complaint and a motion for preliminary injunction. The City then moved for summary judgment. After a hearing on September 10, 1990, the trial court issued a minute order granting the City's motion in part and denying it in part. The parties then filed opposing motions for reconsideration. Following a hearing on January 8, 1991, the trial court entered judgment in favor of Conyers, concluding that although the City's method of apportioning the assessment was not "inherently discriminatory or arbitrary," the "method used by the City in this case is unconstitutional as applied." The City now appeals. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–120.21.A.1 (1992), 12–2101.B (Supp.1993).

## II.

■ The City contends the trial court erred, as a matter of law, in granting summary judgment for Conyers. In reviewing a grant of summary judgment, we decide whether any genuine issue of material fact exists and whether the trial court correctly applied the substantive law. *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

### A.

The statutory scheme for assessing property within an improvement district is set forth in A.R.S. section 48–589 (1988). The superintendent of streets, after receiving a bid for a special project, "shall" apportion the total cost of the project among the lots in the district, "each respectively in proportion to the benefits to be received by each lot." A.R.S. § 48–589.C (1988). The superintendent's apportionment is subject to review by the city council. A.R.S. § 48–590.H (1988). The city council, after conducting a hearing, may modify an assessment or order the superintendent to recompute an assessment "if it finds that the benefits to any lot do not

equal the amount of such lot's respective assessment." *Id.*

■ A party aggrieved by the city council's decision can seek judicial review. *Weitz v. Davis,* 102 Ariz. 40, 424 P.2d 168 (1967). Judicial review, however, is narrowly circumscribed. *Moore v. City of Chandler,* 148 Ariz. 124, 128, 713 P.2d 325, 329 (App.1985); *Town of Peoria v. Hensley,* 26 Ariz.App. 30, 32, 545 P.2d 992, 994 (1976). "The determination as to the special benefits to be received by a particular lot within the improvement district is generally conceded to be a legislative function of the common council of the town." *Town of Peoria,* 26 Ariz.App. at 32, 545 P.2d at 994. Accordingly, the standard of review we apply to decide whether an assessment correctly reflects the benefits derived from the proposed improvement is "whether the common council's opinion is supportable, that is, not arbitrary, fraudulent or discriminatory." *Moore,* 148 Ariz. at 128, 713 P.2d at 329 (quoting *Town of Peoria,* 26 Ariz.App. at 32, 545 P.2d at 994 (a court cannot set aside a city's assessment "unless it clearly appears that the determination was based on erroneous principles of law, or was ... arbitrary, corrupt, fraudulent, or a manifest abuse of legislative authority, ... or unless the assessment so far transcends the limit of equality that its execution will become extortion and confiscation ...")).

### B.

Conyers first asserts that the method the City selected to apportion the sewer system assessment was inherently discriminatory and arbitrary. Specifically, Conyers argues that to comply with A.R.S. section 48–589 and constitutional law, the City must engage in a detailed analysis of each parcel's zoning, shape, topography, and the applicable setback and subdivision regulations. We disagree.

■ Although section 48–589 requires a city to apportion an assessment according to the benefits each landowner receives, it does not define a method to accomplish this mandate. Because the statute requires no particular method, Arizona's courts have acknowledged that

[w]here the rule of apportionment is according to the special benefits derived, the application of that rule may be effected by the employment of *any method* which will accomplish that purpose, whether it be by valuation, frontage, superficial area, or any other method which does not lose sight of the fundamental basis of special assessments for local improvements.

*Weitz,* 102 Ariz. at 43, 424 P.2d at 171 (emphasis added) (quoting *In re Eight and One–Half Mile Relief Drain,* 369 Mich. 641, 120 N.W.2d 789, 793 (1963)); *accord Moore,* 148 Ariz. at 128–29, 713 P.2d at 329–30. A city's chosen method violates section 48–589 when "its application would result in an assessment in substantial excess of benefits, or where it would not be a fair standard by which to measure benefits." *Weitz,* 102 Ariz. at 42, 424 P.2d at 170.

Similarly, a method of apportionment that is "manifestly arbitrary or discriminatory does not fulfill the constitutional requirements of due process and equal protection." *Id.* at 43, 424 P.2d at 171. The supreme court recognized, however, that

there never has been and probably never will be a perfectly equitable distribution of the assessment burden, so statutes or methods for the apportionment of assessments are not to be stricken down merely because they "fail to attain the unattainable." All that is required of them by constitutional law is that they apportion the burden of assessments with approximate equality, upon a reasonable basis of classification, and with due regard to the benefits to the individual property owners.

*Id.*

■ A city, therefore, is not required to analyze any particular set of factors to comply with section 48–589 or constitutional law, as Conyers argues. Instead, a city's method is valid if it apportions the assessment with "approximate equality," involves "a reasonable basis of classification," and takes "due regard" of the benefits to each property owner. Moreover, whether a method of apportionment is valid will vary depending on the

improvement and the characteristics of the improvement district. *See id.* at 42, 424 P.2d at 170 (upholding the City of Tucson's decision not to use a frontage method to apportion the cost of widening and paving a road); *Moore,* 148 Ariz. at 129, 713 P.2d at 330 (approving the City of Chandler's use of a frontage method to apportion a street improvement assessment).

■ By basing a landowner's assessment on his ability to divide his property, the City's method uses a reasonable basis for classifying the benefits of the sewer system and reflects due regard for the benefit to each individual landowner. The benefit a landowner receives from the construction of a sewer system is measured by the landowner's use of the system. The number of units into which a landowner can divide his property correlates directly with the landowner's ability and need to use the sewer system. Additionally, the City's method apportions the assessment with approximate equality, as each landowner's share of the assessment is proportional to his projected use. Finally, Conyers failed to establish that the City's method resulted in an unfair or arbitrary apportionment and provided no evidence that the City adopted this method for fraudulent or discriminatory purposes. We conclude, therefore, that the City's method complied with section 48–589 and constitutional law.

### C.

Next, the City contends the trial court erred in concluding that its calculation of Conyers' portion of the assessment was unfairly discriminatory and thus unconstitutional. In reaching this decision, the trial court found that the City's method forced Conyers to subsidize the other landowners. Specifically, the trial court found that assessing Conyers ten benefits resulted in almost 100 percent of his property being "covered" by the assessment, while assessing each of the other landowners one benefit "covered" only from 57 to 86 percent of their parcels.[2] Because we find that Conyers' share of the

**2.** The assessment "covered" 86 percent of the 10,428 square foot parcel and 57 percent of the

15,804 square foot parcel.

assessment is proportional to the benefits he receives, we conclude that the trial court erred in setting aside the City's assessment.

■ To satisfy section 48–589 and constitutional law, a city must "fairly and justly" apportion an improvement assessment among the property owners within the improvement district. *Weitz,* 102 Ariz. at 43, 424 P.2d at 171. Additionally, a city's assessment is invalid if a landowner's share of the assessment substantially exceeds the benefits the landowner receives. *Id.* at 42, 424 P.2d at 170. In measuring the benefits of an improvement, a city can consider the benefit that would accrue from the improvement if the landowner devoted the property "to any use which might reasonably be made of it," regardless of the landowner's current use. *Id.* at 44, 424 P.2d at 172; *see also Doolittle v. City of Everett,* 114 Wash.2d 88, 786 P.2d 253, 261 (1990) (in apportioning a special assessment, an assessing authority should consider the "future use to which property is reasonably adaptable within a reasonably foreseeable time ..."); *Ridgewood Country Club v. Borough of Paramus,* 55 N.J. 62, 259 A.2d 218, 222 (1969) ("The fact that a landowner has no present, immediate use for the improvement is ... immaterial, so long as the use of the improvement is accessible and available to the land sought to be assessed for any use to which the property may legitimately be put.").

■ Here, the City decided, after considering the zoning in the Granite Heights area, that Conyers could subdivide his property into ten lots. The City also determined that the other landowners could not subdivide their property because, although their parcels exceed 9,000 square feet, none is large enough to permit two residences. Although Conyers disputes the practicality of subdividing his property, he did not establish that he could not subdivide his property into ten units. In addition, Conyers presented no information showing that the other landowners could divide their land into more than one unit. Therefore, we find no impermissible discrimination in the City's decision to assess Conyers ten benefits and each of the other landowners one benefit.

Additionally, we find that the city council could reasonably conclude from the evidence and information before it that Conyers received ten benefits from the sewer system. At the hearing, all the witnesses, including Conyers, testified that the sewer system benefitted Conyers' property and that he would have to install a similar system before developing his property. Harlan Gellhaus, a civil engineer hired by Conyers, testified that the City's sewer system could service all of Conyers' property and that Conyers could build multiple residences on his property. James Purvis, Conyers' real estate broker, agreed that Conyers could build multiple residences on his property, although he questioned the profitability of doing so.

Following the testimony of Conyers' witnesses, Garrett TerBerg, the City's Director of Planning & Zoning, testified that applicable zoning would permit Conyers to develop both commercial and multiple-family housing in addition to single-family residences. TerBerg testified that the possible highest and best use of Conyers' property would be to develop a forty-six-unit multiple-family residential structure on the commercial portion of Conyers' property and five single-family residences on the residential portion. Although on cross-examination TerBerg admitted that he did not have enough information to engage in a detailed analysis, he testified that he had no reason to believe that Conyers could not develop his property in this way. Similarly, Richard Straub, the Director of Public Services, testified that it is common in the Prescott area to build residential or commercial structures on land with the topographical characteristics of Conyers' property.

We find that the city council could reasonably conclude that Conyers' share of the assessment is proportional to the benefits he receives from the project. Having decided that the council's conclusion is reasonable, we must find that it was not arbitrary, corrupt, fraudulent, or discriminatory and that the trial court erred in setting it aside.

### III.

For these reasons, we reverse the trial court's order granting summary judgment in

Conyers' favor and remand the matter with directions to enter judgment for the City of Prescott.

EHRLICH, P.J., and GERBER, J., concur.