[Civ. No. 12508. First Dist., Div. Two. Mar. 27, 1944.]

FRANK GARIBALDI et al., Appellants, v. CITY OF DALY CITY et al., Respondents.

A. J. Scampini and L. F. Mahan for Appellants.

F. E. Hoffmann, Kirkbride & Wilson and Arthur J. Harzfeld for Respondents.

NOURSE, P. J.—Two hundred and eleven plaintiffs representing two hundred and forty-four parcels of property commenced this action to have assessments under street improvement proceedings declared void and to restrain the issuance of bonds to cover such assessments. Defendants' demurrer to the complaint was sustained, and a temporary restraining order was dissolved. Following the judgment for the defendants one hundred and ninety-three plaintiffs paid their assessments, after bonds had been issued under the Improvement Bond Act of 1915 (Stats. 1915, p. 1441; Deering's Gen. Laws, Act No. 8209), and the appeals of those plaintiffs were dismissed on the ground that the issue was then moot. (*Garibaldi* v. *City of Daly City*, 61 Cal.App.2d 514 [143 P.2d 397].) The total assessment for the entire improvement was $131,496.46. The remaining eighteen plaintiffs, who are the appellants herein, represent thirty parcels of land assessed for $13,824.15. Their complaint is framed in seven separate causes of action, each asserting some irregularity in the street improvement proceedings.

The first cause of action is grounded on the alleged failure of the municipal authorities to comply with the provisions of the "Special Assessment Investigation, Limitation and Majority Protest Act of 1931." (Stats. 1931, p. 1372; Deering's Gen. Laws, Act No. 8490.) It is alleged that the city council on February 5, 1940, adopted a resolution of intention to proceed with the proposed improvement at a total estimated

cost of $254,287, of which cost the federal Works Progress Administration was expected to contribute $178,808, the remainder to be assessed against the real property of the proposed assessment district. Prior to the adoption of this resolution, proceedings were had under Act No. 8490, and after due notice to the property owners approximately seven and one-half per cent of the property owners appeared and demanded that investigations be made in accordance with the act.

Resolution No. 630 adopted August 29, 1938, determined the general nature of the proposed improvement and "the boundaries or extent of the district or lands to be specially assessed," the estimated cost and the declaration that it was anticipated that 45 per cent of the total cost would be contributed by federal agencies. Notice thereof, with reference to plans, maps and specifications on file with the city clerk, was given to all the plaintiffs herein, and the complaint alleges that "each and all of them . . . did not demand the making of the investigations or reports" provided for in Act No. 8490. Thereupon the city council duly passed its resolution No. 645 finding that less than 15 per cent of the land owners had demanded the investigations and that the investigations and reports required by the act had thus been waived.

When the city council, acting under section 13 of the act, found that less than "fifteen per cent" of the area had made the demand, it properly concluded that further proceedings under the act were not mandatory. But it is argued that the proceedings covered by the resolution of February 5, 1940, were substantially different from those instituted by the resolution of 1938 and for this reason the procedure outlined in Act No. 8490 should have been strictly followed.

The respondents make several answers to the argument, but it is sufficient to note that section 14 of Act No. 8490 provides that "Any action . . . in which the validity of any of the proceedings taken under the provisions of this act is questioned or attacked must be commenced within sixty days after the date of the adoption of the resolution or ordinance finally ordering the . . . improvement." The complaint alleges that five of the property owners in the proposed district protested the doing of the proposed improvement upon the ground, among others, that the provision of Act No. 8490

had not been complied with, that these protests were heard and overruled, and·that, on February 26, 1940, the city council adopted the resolution ordering the performance of the work. Of these five protesting owners four have paid the assessment and their appeals have been dismissed. The fifth is not named as a plaintiff and hence is not a party to this appeal. If the protests of these owners are available to the remaining parties they are met by the limitation of the time to commence proceedings. The time to sue under that act for a failure to comply with any of its provisions commences to run on the date of the adoption of the resolution "ordering the improvement." Hence that time expired sixty days after February 26,. 1940. But this action was not commenced until January 28, 1942, and this cause of action is completely barred by these provisions of the act.

Appellants argue that, notwithstanding these provisions of the act they were permitted to sue under section 26 of the "Improvement Act of 1911" (Stats. 1911, p. 730; Deering's Gen. Laws, Act No. 8199) under which the improvement proceedings were taken. This section authorizes a suit to test the validity of an assessment within thirty days "after the recording of the warrant, diagram and assessment" and appellants state that this action was commenced within that time. If this were the only limitation found in the act of 1911 there would be force in the argument. But section 16 of that act provides: "At any time within ten days from the date of the first publication of the notice of award of contract, any owner . . . who claims that any of the previous acts or proceedings, . . . are irregular, defective, erroneous or faulty, may file with the clerk of the city council a written notice specifying in what respect said acts and proceedings are irregular, defective, erroneous or faulty. . . . All objections to any act or proceeding occurring prior to the time within which such objections are permitted to be filed in relation to said improvement, not made in writing and in the manner and at the time aforesaid, shall be waived, provided the resolution of intention to do the work has been actually published, as provided in this act." The contract was executed on April 24, 1940; the work was completed December 3, 1941; the date of publication of notice of the award does not appear. ■ But the complaint fails to plead that due publication was not made, and we must presume that this official duty was performed in due course. ■ It does not plead that any of the prop-

erty owners filed a protest or objection under the provision of section 16 to any of the proceedings theretofore taken, and hence such objections must be deemed to have been waived.

 The allegation that after the completion of the contract the appellants appealed to the city council in protest of the assessment is based upon exhibit 9 which is attached to the complaint. This appeal expressly states that it is made under the provisions of section 21 of the 1911 act. This section provides that: ''After the contractor of any street work has fulfilled his contract'' notice thereof shall be given to the property owners and a time set for hearing objections. Any person feeling aggrieved ''by any act or determination of the superintendent of streets, or city engineer in relation thereto . . . or having or making any objection to the correctness of the assessment or diagram or other act, determination or proceedings of the superintendent of streets, or city engineer, shall prior to the day fixed for the hearing upon the assessment, appeal to the city council. . . .''

It is apparent that this section relates solely to protests as to the proper performance of the work, and the correctness of the individual assessments. It does not relate to the jurisdictional matters relevant to the formation of the district or to those matters which lead up to the execution of the contract. Those matters are subject to protest under section 16 of the 1911 act, and in this case the protests were filed many months after the time fixed in that section. The clear purpose of these provisions of the act is to require all questions of jurisdiction, and all questions of regularity in the organization of the district, and all procedural matters leading to the letting of the contract, to be determined before the work under the contract is commenced. We conclude that since the first cause of action pleads an attack upon the original proceedings based upon protests which were not made within the prescribed time it fails to state a cause of action.

 The second and third causes of action are based upon allegations that by section 6 of the resolution of intention No. 693 it was declared that the work would be prosecuted if the federal works agency of the Works Progress Administration contributed thereto the sum of $178,808, whereas that agency contributed but $122,000; that the sum to be raised by assessment of the property owners was $75,000 whereas because of the smaller contribution, the total assessment amounted to

$131,000. There is no charge of fraud, and it does not appear at what stage of the proceedings the decision of the federal authorities to contribute the smaller sum was communicated to the city authorities. It is alleged that, prior to the time when the work was commenced, no one of the appellants filed any protest upon this ground, that five only of the appellants did file protests upon the ground that the Debt Limitation Act had not been followed, but there is no allegation which would serve to stay the operation of section 16 of Act No. 8199 which provides that when no protest has been made to the award of the contract within the time set therein all such protests shall be deemed waived.

The third cause of action rests upon the same state of facts and is supported in argument upon the theory that the contract awarded for the improvement was limited in amount by the resolution of intention. This contract is attached as an exhibit and does not support the argument. However, in the absence of fraud, the amount contemplated by the contract cannot be questioned in this attack upon the assessment since such objections are deemed waived by section 16 of the same act. (Act No. 8199.)

The fourth cause of action alleges that the assessment was confiscatory because the total true value of all the lands in the district was not in excess of $150,000. From this it is argued that the assessment was made contrary to the provisions of section 10 of the Debt Limitation Act. But this section provides its exceptions and when the property owners fail to protest the proposed improvement the debt limitations found in the act are deemed waived. From the first cause of action, which is made a part of this one, it appears that the first resolution of intention No. 630 contemplated the improvement of 21,000 front feet of streets and alleys in the proposed district and that the second resolution covered 27,000 front feet. But it does not appear and cannot be ascertained from any of the pleadings whether any of the appellants now protesting was an owner of any of the additional parcels included by resolution No. 693.

And it does not appear that the assessment chargeable to any one of these appellants was increased or decreased by the inclusion of these other properties. On the whole the complaint fails to show whether these appellants were injured in any respect by the inclusion of other lands in the district

and the consequent increase in the total cost of the improvement.

The fifth cause of action also attacks the assessment upon the ground that section 10 of the Debt Limitation Act was exceeded. What has been said in reference to the fourth cause of action applies equally here.

The sixth cause of action pleads that numerous changes in the plans and specifications resulted in an increase in the assessment of $50,000. It is not alleged, however, that these changes in the plans were unnecessary; that the appellants suffered any detriment because of them; or that, in making the changes, the city authorities acted fraudulently, unreasonably, or arbitrarily. The basis of the attack made under this cause of action is that the city engineer recommended that the type of construction of the pavement first contemplated would not hold up under heavy traffic and, upon his advice, there was substituted a four-inch base with a one and one-quarter wearing surface for the two-inch base originally planned. If the protest or appeal of the property owners may be treated as properly raising this objection to the assessment the order of the city council in overruling or denying the appeal must be held conclusive upon the protestants in the absence of fraud or arbitrary action having the semblance of fraud. This is the accepted rule of *Hannon* v. *Madden,* 214 Cal. 251 [5 P.2d 4] and similar cases. Of all the cases cited by appellants in connection with their sixth cause of action no one has any support for the point advanced. In the Hannon case, which they cite, the Supreme Court said (p. 257): ''Where an appeal has been taken to the council, its decision may be attacked in a legal proceeding only upon pleading and proof that the board acted fraudulently or that its action is so palpably unreasonable and arbitrary as to raise an inference of plain abuse of discretion as a matter of law. (*Cutting* v. *Vaughn,* 182 Cal. 151 [187 P. 19]; *Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 24 [L.R.A. 1918E, 197, 148 P. 217]; *Lambert* v. *Bates,* 137 Cal. 676 [70 P. 777]; *Hutchinson* v. *Coughlin,* 42 Cal. App. 664 [184 P. 435].)''

This ruling is cited with approval in the late case of *City and County of San Francisco* v. *Boyd,* 22 Cal.2d 685, 690 [140 P.2d 666]. The Hannon case was followed to the same point in *Richardson* v. *City of Redondo Beach,* 132 Cal.App.

426, 433 [22 P.2d 1037], and also in support of another rule which is controlling here—the failure to properly raise the issue of fraud. In this respect it is said in the Hannon case (p. 267) "It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which amount to mere conclusions."

The seventh cause of action is a general attack upon the assessment as a whole under the charge that it included "a sum in excess of $10,000 for costs and expenses incurred in connection with work and improvement other than the work and improvement proposed to be and ordered done" under the resolution initiating these proceedings. The allegation is made upon information and belief unsupported by any allegation that it was called to the attention of the city council by protest or appeal, or that the alleged excess was included in the assessment fraudulently or arbitrarily. If there was any irregularity in the inclusion of such sum in the assessment it must be deemed to have been waived by the failure to protest within the time and in the manner prescribed in the Improvement Act. Section 21 of this act (No. 8199) declares that the decisions of the city council shall be final and conclusive on appeal "as to all errors, informalities, and irregularities which said city council might have avoided, or have remedied during the progress of the proceedings or which it can at that time remedy." Manifestly if the assessment included an item not connected with the project of improvement the city council could remedy the defect when that matter was called to its attention by protest or objection. But if none is made the error is deemed waived. Failure to protest within the limits of the statute renders the attack collateral and not a proper subject for court proceedings. (*Woodill* v. *Glendale,* 208 Cal. 564 [282 P. 797].)

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.