[Civ. No. 17666. Second Dist., Div. One. Mar. 19, 1951.]

OLIVER C. LOGAN, Appellant, v. CITY OF GLENDALE et al., Respondents.

Paul S. Crouch and Jackson T. Carle for Appellant.

Henry McClernan, City Attorney, John H. Lauten, Assistant City Attorney, Joseph R. Roark, Deputy City Attorney, Aubrey N. Irwin and Henry Melby for Respondents.

WHITE, P. J.—Appeal from a judgment of dismissal following the sustaining of demurrers to plaintiff's fourth amended complaint without leave to further amend.

The city council of Glendale undertook by a special assessment proceeding to provide for installation of ornamental street lights and related equipment on Brand Boulevard, one of the main business streets of Glendale. Plaintiff and others, owners of property on Brand Boulevard, filed protests which were overruled. Thereupon plaintiff brought the present proceeding to restrain the city and its officers from levying assessments or paying out any of the city's general funds in connection with the improvement, and for declaratory relief.

The fourth amended complaint alleged that on January 7, 1947, pursuant to sections 2851 and 2852 of the Special Assessment Investigation, Limitation and Majority Protest Act of 1931 (Sts. & Hy. Code, div. 4), the city council caused a notice of hearing on the proposed improvement to be issued and set February 13, 1947, as the time for hearing protests; that plaintiff filed his written grounds of protest and orally presented the same, said grounds being as follows:

(1) That the proceedings were partial, biased and an abuse of discretion, in that the council "permitted and encouraged the withdrawal of protests and objections to said improvement, after and subsequent to the time fixed by said Council limiting the filing of protests."

(2) That the council, although permitting the withdrawal of protests, denied plaintiff and other property owners the right to file protests subsequent to the deadline.

(3) That the purported improvement was a replacement of the existing street lighting system and not the installation of a new system as contemplated under the Improvement Act of 1911.

(4) That the improvement would not result in local benefit to the property proposed to be assessed.

(5) That a portion of the equipment and installations were not proper items to be paid for by assessment and were of no benefit to the property assessed.

(6) That the proposed improvement was not permanent in character and therefore not a proper improvement to be financed by assessment, since it was to replace a former similar improvement, and would in turn be replaced in the future.

(7) That under the charter of the city of Glendale, certain transformers and control equipment, estimated to cost $20,000 out of the $100,000 estimated cost, could be paid for only with funds of the public service department of the city.

(8) That the proposed system, if beneficial at all, would benefit the entire city, and was not local in nature.

(9) That a portion of the estimated cost, to wit, the painting of poles, was an ordinary maintenance operation required to be performed by the public service department.

It was then alleged that the council continued the hearing on the protests to February 20, 1947, and again to February 27, 1947, the plaintiff each time renewing his objections, and that on February 27 plaintiff specifically objected to acceptance by the council of withdrawals of protests filed subsequent to February 13, 1947, "and a report filed with said City Council on the 27th day of February, 1947 by Defendant John C. Albers, City Engineer, in which, as a consequence of acceptance by the City Council of said withdrawals, said City Engineer found that less than a majority of the area of the district proposed to be assessed to pay a portion of the cost of said purported public improvement, was represented in protests filed by owners thereof."

Next, it was alleged that on October 16, 1947, the council, claiming to act pursuant to section 17 of article XIII of the Constitution of California, adopted Resolution No. 7861, calling a hearing for October 30, 1947, for the purpose of determining whether the public convenience and necessity required construction of the improvement; that prior to the hearing plaintiff and other property owners filed protests upon the following grounds, among others:

(1) All the grounds hereinabove stated.

(2) That the proposed assessment was not impartial, fair nor general.

(3) That the cost of supplying poles for a portion of the improvement was to be spread over the entire district assessed, while said poles were useful and beneficial only in a limited area.

(4) That the assessment on individual parcels had no relation to value of property assessed or benefits to be derived.

(5) That the council had no right to proceed under the aforesaid section 17 of article XIII of the Constitution.

It was further alleged that on October 30, 1947, the council adopted Resolution of Intention No. 7877, calling a hearing for November 28, 1947, on which last mentioned date the plaintiff and others appeared and made objection and protest on the grounds hereinbefore mentioned, which objections were overruled; that about March 30, 1948, within 10 days from date of first publication of notice of award of contract (Improvement Act of 1911, § 5258), plaintiff sought to file with the clerk of the city council a notice specifying in what respect the proceedings were defective, but that his "protest and objection" was rejected and plaintiff was told by the city attorney that his protest was improper and not provided for by law under the Improvement Act of 1911 and he could not protest further until assessments were levied, but that said statements and advice by the city attorney were false, and relying on such statements and advice plaintiff did not file his protest and objections. As a result, it was alleged, a controversy calling for declaratory relief has arisen.

Further allegations of the fourth amended complaint relate to proceedings undertaken by the city council as far back as 1941, a proposed map of the district prepared in 1948, a charge that between 1941 and 1947 no notice of proposed changes in the boundary of the assessment district or in the work proposed had been given; that in February, 1947, the council found that the public interest and necessity required construction of the proposed improvement, and subsequently found that the protests against such improvement were made by owners of less than one-half of the district to be assessed, and therefore overruled all protests; that certain statements by the city attorney and the city engineer were false; that plaintiff and others have been deprived of substantial rights under the Special Assessment Investigation, Limitation and Majority Protest Act of 1931 and section 17 of article XIII of the Constitution of the State of California; that the city council never abandoned the proposed improvement in accordance with the Act of 1931, but purported to proceed under the aforesaid section 17 of article XIII of the Constitution in disregard of pertinent provisions of the Act of 1931; that funds of the city allocated to its chamber of commerce were

used to discourage protests; that the city attorney and the city engineer were unlawfully delegated the legislative function of determining the number and character of protests, and the council acted upon reports of such officials which were false and untrue ''because the total area included in the various districts proposed to be assessed varied and differed so that parcels included at one time were excluded at others and said statements represented a false and untrue estimate rather than a factual statement; . . . .'' Further, it was alleged that the notice of hearing and notice of improvement referred to certain maps and plans for information, which maps and plans, plaintiff was informed, were not on file in the office of the city clerk, whereby plaintiff and others were precluded from exercising their rights of protest and/or of obtaining necessary information. In addition it is contended that the final cost of the improvement exceeded the estimated cost by more than 10 per cent.

As a second cause of action it was alleged that the purported improvements, being placed on the main thoroughfare of Glendale, were for the benefit of the entire city, the entire population, as well as those owning property in the assessed area; that consequently, in setting the boundaries of the assessment district, the city council abused its discretion. Further, as a third cause of action, it was charged that the improvements are merely replacements of old improvements and should be paid for from the city's general fund. As a fourth cause of action it was charged that the assessment was unfair because the rights of way of Pacific Electric Railway Corporation and Southern Pacific Railway are either not included in the district or are assessed a nominal amount, contrary to section 5300 of the Improvement Act of 1911. By the fifth cause of action it is asserted that the entire cause of the improvement should be paid for by the City of Glendale Public Service Department.

The foregoing statement, lengthy as it is, constitutes a mere summary of the allegations of the fourth amended complaint. Many of the charges therein contained are mere conclusions and consequently subject to demurrer. For the purposes of this decision we will consider the contentions made by appellant in his opening and closing briefs. It is urged that the proceedings of the council were irregular; that the owners of property in the district will be deprived of property without the due process of law; that a chartered city proceeding under the provisions of section 17 of article XIII of the Constitution

must adhere also to the requirements of the Special Assessment Investigation, Limitation and Majority Protest Act of 1931; that a property owner is "denied a hearing" when the council fails to "consider on their merits" protests of a property owner because of erroneous advice of the city attorney that such protests were not "before" the council; that property owners are deprived of property without due process when the council permits withdrawal of protests after the deadline barring additional protests; that due process is denied when a council bases its action overruling protests upon false information supplied by city officers; that the facts set forth in the complaint show fraud, abuse of discretion; that the council could not commence assessment proceedings under one law and then change to that authorized by another law; that the resolution of intention is uncertain; that under the city charter, custom and practice, a lighting system includes certain transformers and control equipment which must be provided by the city's public utilities system; and that the failure to assess the railroad rights of way comparably to other property constitutes a violation of section 5300 of the Improvement Act of 1911.

It is appellant's position that the Act of 1931, *supra* (Sts. & Hy. Code, §§ 2800-3012), the Improvement Act of 1911 (Sts. & Hy. Code, §§ 5000-6794), and section 17 of article XIII of the California Constitution all were violated by the special assessment proceedings complained of. The contention is made that assessment proceedings were *in invitum* and must be strictly construed (*Stockton* v. *Whitmore,* 50 Cal. 554; *Creighton* v. *Manson,* 27 Cal. 613; *Barber Asphalt Paving Co.* v. *Costa,* 171 Cal. 138, 139 [152 P. 296] ; *Gustine* v. *Silveira,* 67 Cal.App.2d 403 [154 P.2d 474] ). It appears to be appellant's position, further, that the facts alleged in the fourth amended complaint show a "substantial departure from the requirements of the governing sections of the Streets and Highways Code and the Constitution."

Section 2804 of the Act of 1931 (Sts. & Hy. Code) expressly provides that the limitations therein set forth shall not apply ". . . when said improvement proceedings are by a chartered city, and said city has complied with the provisions of Section 17 of Article XIII of the Constitution; . . . ." Section 17 of article XIII of the Constitution of the State of California provides, so far as here pertinent, that: "All proceedings undertaken by any chartered city . . . for the construction of

any public improvement . . . by special assessment . . . shall be undertaken only in accordance with the provisions of law governing: (a) limitations of costs . . . in relation to the value of any property assessed therefor, (b) determination of a basis for the valuation of any such property, (c) payment of the cost in excess of such limitations, (d) avoidance of such limitations, (e) postponement or abandonment, or both, of such proceedings in whole or in part upon majority protest; and particularly in accordance with such provisions as contained in Sections 10, 11 and 13a of the Special Assessment Investigation, Limitation and Majority Protest Act of 1931. . . ." (See Sts. & Hy. Code, div. 4, pts. 5-7.)

Section 17 further provides as follows: "Notwithstanding any provisions for debt limitation or majority protest as in this section provided, if, after the giving of such reasonable notice by publication and posting and the holding of such public hearing as the legislative body of any such chartered county, chartered city, or chartered city and county shall have prescribed, such legislative body by no less than a four-fifths vote of all members thereof, finds and determines that the public convenience and necessity require such improvements or acquisitions, such debt limitation and majority protest provisions shall not apply."

■ It is clear that if respondent city has complied with the provisions of section 17 of article XIII of the Constitution, then its proceedings are valid. ■ Appellant in his complaint has failed to allege that the city council did not find and determine, in accordance with the provisions of the cited section, that the public convenience and necessity required such improvement. It must be assumed, therefore, that such a finding was made, and consequently, under the provisions of the section, that the "debt limitation and majority protest provisions" of the Act of 1931 are not applicable.

We come now to the argument that assessing the right of way of the Pacific Electric Railway but a nominal amount constituted an abuse of discretion and a violation of section 5300 of the Streets and Highways Code. Section 5300 provides: "Whenever a railroad, street or interurban railroad right of way shall front on or abut or parallel or be included with or divide longitudinally any street improved under this division or shall be included within any district to be assessed for the cost of any work provided in this division, such railroad rights of way (whether it is owned in fee or as an easement) shall be included in the warrant, assessment and dia-

gram and shall be assessed in the same manner and with the same effect as other lots, lands or parcels of land are assessed, . . . ."

The answer to appellant's contention in this respect is that the law is well settled that the determination of a legislative body as to the relative *benefits* conferred upon property by an improvement is conclusive in the absence of facts showing fraud or a denial of constitutional rights to property owners. (*Hannon* v. *Madden,* 214 Cal. 251 [5 P. 2d 4]; *Blake* v. *City of Eureka,* 201 Cal. 643 [258 P. 945]; *Duncan* v. *Ramish,* 142 Cal. 686 [76 P. 661].) As said in the last cited case: "It is true that local assessments are said to be imposed on the theory that the property adjacent to the improvement receives special benefit therefrom. But this is a matter which is for the determination of the legislative authority of the state, acting through its established agencies for the government of political subdivisions, or directly by the legislature of the state, as that body may see fit. It is enough for the local property-owner that he has a right to be heard before the city council upon the question, by filing a petition of remonstrance in the proceeding prescribed by law, setting forth his reasons why the improvement should not be made. Upon this the council must decide the question, and its decision is final."

As stated in *Bailey* v. *City of Hermosa Beach,* 183 Cal. 757, 764 [192 P. 712], "All that the statute requires is that such lands be not omitted because they are used for railroad right of way, and that if benefited they be assessed like other lands." In *Canby* v. *Council of City of Los Angeles,* 114 Cal.App. 94 [299 P. 732], it is said, at page 100: ". . . it would seem plain that making an assessment according to *benefits* involves an omission from assessment of property not benefited." (Emphasis added.) Appellant's fourth amended complaint must be held to be insufficient to show that the city council abused its discretion in concluding that the private rights of way of the Southern Pacific Railway or the Pacific Electric street railway system were not benefited substantially by the improvement. Concededly, the question is one upon which there might be some difference of opinion, but the conclusion of the city council is not shown by the pleadings to be an abuse of its discretion. It does not appear from the fourth amended complaint that substantial evidence was presented by appellant to show that the rights of way were benefited. ". . . the legislature did not intend that the appeal to the council should

be prosecuted in a perfunctory manner or should be a mere formality. It devolves upon protestants to show that sufficient evidence was adduced to support the appeal, and if the council should overrule the appeal because of its misapplication of the law to the facts, it is incumbent upon the party seeking the review to clearly present to that tribunal the questions of law which he claims to have been misconstrued or erroneously applied, and show that they have been presented upon the appeal to the council." (*Hannon* v. *Madden, supra,* p. 259.)

We are further persuaded that appellant's contentions are barred by the operation of the curative provisions of the Improvement Act of 1911 (Sts. & Hy. Code, §§ 5003, 5369). Section 5003 provides that "This division shall be liberally construed in order to effectuate its purposes. No error, irregularity, informality, and no neglect or omission of any officer, in any procedure taken under this division, which does not directly affect the jurisdiction of the legislative body to order the work or improvement shall avoid or invalidate such proceeding or any assessment for the cost of work done thereunder. The exclusive remedy of any person affected or aggrieved thereby shall be by appeal to the legislative body in accordance with the provisions of this division." Section 5369 provides "No assessment, warrant, or diagram, and no proceedings prior to the assessment, shall be held invalid by any court for any error, informality, or other defect in the same, where the resolution of intention of the legislative body to do the work, has been actually published as provided in this division. . . ." The date of publication of the resolution of intention does not appear from the pleading under consideration. As stated in *Garibaldi* v. *City of Daly City,* 63 Cal.App. 2d 480, 484 [147 P.2d 122], ". . . the complaint fails to plead that due publication was not made, and we must presume that this official duty was performed in due course."

Concededly, no curative provisions can be successfully invoked against a party who shows that he has been deprived of property without due process of law. But in this respect appellant has failed to plead facts showing such deprivation. "It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which amount to mere conclusions." (*Hannon* v. *Madden, supra,* p. 267.)

Appellant's contention that certain transformers and control equipment provided for by the assessment, the installa-

tion of poles and the painting of existing poles, constitute equipment and functions of the Public Service Department of the City of Glendale, a municipally owned public utility, is answered by the decision and language of *Logan* v. *City of Glendale,* 132 Cal.App. 169 [22 P.2d 552]. In that case appellant contended that an ornamental street lighting system was part of the plant and equipment of a public utility. The court there affirmed a judgment denying appellant an injunction against improvement of Brand Boulevard with an ornamental electric lighting system, and in so doing observed: "Manifestly, a private utility which is operated for the purpose of selling electric energy for profit is not interested in the character of poles or ornaments used in connection with the lighting of public streets. On the other hand, these poles and ornamental lights are a distinct improvement of the property abutting the public street and are erected by the city in its governmental capacity as an improvement of the street." We think the foregoing reasoning applies to all of appellant's contentions in this respect. The function of the utility is to furnish the power. If, for instance, special transformers are required, they are normally furnished by the consumer, as in the case of doorbells, or radios. The case relied upon by appellant, *Snell* v. *Clinton Electric L., H. & Power Co.,* 196 Ill. 626 [63 N.E. 1082, 89 Am.St.Rep. 341, 58 L.R.A. 284], involved the question of discrimination between customers by a public utility.

Further discussion of appellant's contentions would serve no useful purpose. We conclude that the allegations of his fourth amended complaint fail to state a cause of action for the redress sought—that is, for either injunction or declaratory relief.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 5, 1951.