575 P.2d 360

**Charles A. HINZ, Appellant.**

**v.**

**The CITY OF PHOENIX, and J. E. Attebery, City Engineer, Norman McLean, Street Superintendent for the City of Phoenix, in their official capacities, Appellees.**

**No. 1 CA–CIV 3483.**

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 2, 1978.

Andrew Silverman, Director, Maricopa County Legal Aid Society, Older Americans Program by Anna Collis Bronnenkant, Staff Atty., Phoenix, for appellant.

Andy Baumert, III, City Atty. by Jesse W. Sears, Asst. City Atty., Phoenix, for appellees.

National Senior Citizens Law Center by Robert B. Gillan, Los Angeles, Cal., for amicus curiae.

## OPINION

FROEB, Chief Judge.

Charles A. Hinz is seventy-two years old and is indigent. He brought this suit to contest the legality of the method of apportionment of a street assessment against his property and the constitutionality of the manner of assessment collection. From an order dismissing his amended complaint, he brings this appeal.

The City of Phoenix (City) proposed to improve certain streets within the city using the procedure set forth in A.R.S. §§ 9–671 through 9–716 for the making of general public improvements. The City Council passed its resolution of intention of the proposed work on April 9, 1974. Hinz, as a resident in the proposed improvement district, received notice of the proposed street improvement.

On May 6, 1974, Hinz filed a letter of protest to the formation of the proposed improvement district. The City received protests from occupants of 45.67% of the frontage of the proposed district, but the City Council, at the hearing of protest on June 4, 1974, decided that the protests filed were insufficient and, on June 18, 1974, ordered the improvement described in the resolution of intention to proceed.

Upon completion of the improvement the superintendent of streets determined the total costs of the project and the assessments upon the lots benefited by the improvement. Hinz was assessed $1,406.97.

On June 24, 1975, upon completion of the assessment, the warrant and assessment were recorded, creating a lien upon the properties involved to the extent of the assessment. Pursuant to A.R.S. § 9–687(E), a hearing to consider any objection to the legality of the assessment was noticed. The hearing was held July 15, 1975. At the hearing the City Council approved the assessment lien.

Since the project was to go to bond, the property owners were given an opportunity to pay the assessment prior to the issuance of the bonds and the contractor's demand for payment. After the contractor made

his return, the superintendent of streets certified the list of unpaid assessments. On September 2, 1975, the City Council authorized the issuance of improvement bonds for the unpaid assessments. Pursuant to A.R.S. § 9–694(C), Hinz's assessment was included with those that went to bond since he had not paid the amount of his assessment.

Hinz was given several notices that the first payment of his assessment was due, but he did not make the payment. After proper notice and publication, the lien against Hinz's property was offered for sale at a public auction set for February 20, 1976. Hinz filed this action to enjoin the City from selling the special assessment lien against his property for failure to pay installments due.

■ The trial court granted the City's motion to dismiss the amended complaint for failure to state a claim upon which relief could be granted. However, since the parties had a reasonable opportunity to and did present matters outside the pleading to the trial court, and the trial court did not exclude them in its determination, the motion was treated as one for summary judgment. R.Civ.Proc., Rule 12(b); *Davidson v. All State Materials Co.*, 101 Ariz. 375, 419 P.2d 732 (1966); *Shun v. Hospital Benefit Association*, 89 Ariz. 12, 357 P.2d 603 (1960). The correctness of the dismissal is, therefore, tested by the standards set forth in R.Civ.Proc., Rule 56(c). Under Rule 56(c) a motion for summary judgment should be granted when the record before the trial court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Hinz presents three issues for our review: (1) the legality of the method of assessment used, (2) the constitutionality of the method of assessment collection provided by statute, and (3) the effect of the Homestead Act on special assessments.

## METHOD OF ASSESSMENT

The frontage method was used in determining the assessment in this case. According to this method the assessment placed upon each lot varies only with the size of the property adjacent to the improvement and does not take into consideration the use to which the property is put. Thus, Hinz, who lives in a home valued at approximately $15,000, was assessed $1,406.97, and The Shadows, an apartment complex across the street occupying ten lots each of which is approximately the size of Hinz's property, was allegedly assessed at an average rate of $1,340 per lot.

■ Arizona Revised Statutes § 9–686(C) requires the superintendent to assess lots "in proportion to the benefits to be received by each lot." Use of the frontage method is appropriate in some instances, but only when it fairly reflects the benefits to each lot. *Weitz v. Davis*, 102 Ariz. 40, 424 P.2d 168 (1967).

Hinz contends that, since an apartment complex by its density derives a greater benefit from a street improvement than a single landowner does, the use of the frontage method in this case led to an illegal assessment because the rate of assessment per lot for himself and for The Shadows was almost the same. We do not reach the merits of this question, however, because Hinz failed to follow the procedure set forth in A.R.S. § 9–687(F) for objecting to the method of assessment used. Although Hinz alleges in his amended complaint that he objected to the proposed improvement and to the method of assessment, the record shows that the only time Hinz ever made such a protest was in his letter of May 6, 1974, following the publication of the resolution of intention. The protest at that stage is by statute limited to the question of whether there should be an improvement at all and the extent of the improvement district. A.R.S. § 9–676. After the improvement was completed, the amount and method of assessment for the cost was established by the City. A.R.S. § 9–687(F) provides a specific procedure for the making of "any objection to the legality of the assessment or to any of the previous proceedings connected therewith." Anyone

"directly interested in the work or in the assessment" may, prior to the time fixed for the hearing on the assessment and the previous proceedings connected therewith, file a written notice specifying his objection. The governing body (the City Council in this case) passes upon the objections at the hearing. A.R.S. § 9–687(F) goes on to specify the consequences of the process: "The decision of the governing body shall be final and conclusive upon all persons entitled to object as to all errors, informalities and irregularities which the governing body might have remedied or avoided at any time during the progress of the proceedings." Following the assessment Hinz made no protest or objection in accordance with A.R.S. § 9–687(F).

Since Hinz did not follow the procedure provided by law in seeking relief from the assessment, he is precluded from attacking the legality of the assessment both by the terms of A.R.S. § 9–687(F) and by the well-established principle of law that administrative remedies must be exhausted before judicial relief can be sought. *Stephens v. Industrial Commission*, 114 Ariz. 92, 559 P.2d 212 (App.1977).

### METHOD OF ASSESSMENT COLLECTION

Hinz challenges the constitutionality of the method of assessment collection provided by statute and used by the City in this case under the Due Process Clause and the Equal Protection Clause of the United States Constitution. He also contends that the foreclosure of the lien constitutes a taking of property without just compensation.

In his argument that the method of assessment collection embodied in A.R.S. §§ 9–671 through 9–716 violates due process of law, Hinz contends that, although the statutes allow for hearings on the proposed improvement (whether there will be an assessment), A.R.S. § 9–676, and the method of assessment (how the amount of the assessment is determined), A.R.S. § 9–687, their failure to provide an opportunity to be heard on the manner of payment (how the assessment is collected) violates due process of law.

A.R.S. § 9–686(H) provides that upon recording of the warrant and assessment, the amounts assessed become a lien upon the property assessed. The assessment can be collected by the contractor by demand, A.R.S. § 9–687(B), or by an action to foreclose the lien, A.R.S. § 9–688(A). A.R.S. § 9–692 provides for an alternate method of collection in the event the governing body decides to issue bonds to represent the cost and expense of the improvement. In such case, the assessment is collected in annual installments, the number of which (not to exceed twenty-five) is established by the governing body, A.R.S. § 9–693, and in case of nonpayment, by sale of the property at a public auction, A.R.S. §§ 9–698 and 9–700. A.R.S. § 9–702 provides for redemption of the property.

Hinz argues that, because this process does not give him an opportunity to be heard on the manner of payment, the requirements of due process are not satisfied. He relies on *Henningson, Durham & Richardson v. Prochnow*, 13 Ariz.App. 411, 477 P.2d 285 (1970) which states that due process requires "an opportunity to be heard on all phases of this lien creating process." Our court has said, however, that this means an opportunity to be heard *on* all phases of the lien creating process but not necessarily *at* all phases. *Gillard v. Estrella Dells I Improvement District*, 25 Ariz.App. 141, 541 P.2d 932 (1975). Since A.R.S. § 9–687(F) provides an opportunity to any interested person to be heard on any protest "to the legality of the assessment or to any of the previous proceedings connected therewith," the procedure complies with due process.

Hinz next contends that the effect of the lien provision is to discriminate against the class of landowners who are indigent in violation of equal protection of the laws. He submits that, although the statutes pertain to the class of property owners who have had assessments made upon their property, the lien provisions serve to dis-

criminate against the indigent property owner because he will always have a lien placed on his property since he cannot pay in full immediately.

We do not find a denial of equal protection of the laws here. On their face the statutes involved apply equally to all persons who own property. The fact that their economic impact is greater on some does not mean that they are denied equal protection of the laws. Since no legislative classification is involved in determining the amount or the manner of paying the assessment lien, the statutes do not deny equal protection of the laws. If the laws relating to special assessments for public improvements are economically harsh in some instances, the matter should be addressed to the legislature within whose power it is to change them.

Hinz also argues that the provision in A.R.S. § 9–700 for the sale of the property for delinquency in installment payments amounts to a taking of private property for public use without just compensation. His contention is that the sale of the entire property to the auction purchaser for merely the amount of the lien and not for its fair market value, results in a taking by the City without just compensation. He states that if the property were sold for its fair market value and the balance over and above the lien were returned to him, there would be no public taking without just compensation. His argument lacks merit, however, and stems from his misunderstanding of the sale procedure under A.R.S. § 9–700. He correctly alleges that only "the entire assessment including the delinquent installments" is offered for sale, but his allegation that the whole of the land is sold for that amount is erroneous. Under A.R.S. § 9–700(A) "the person who will take the least quantity of land and then and there pay the amount of the assessment, penalty and costs due, including fifty cents to the superintendent for a certificate of sale, shall become the purchaser." In other words, the statute contemplates that, in the auction-bid process, only that portion of the land which is equal in value to the amount of the lien is sold. The balance of the land is retained by the owner. The possibility that the whole of the land will be sold exists only when there is only one bidder or when there are no bidders. If there is only one bidder, then it is possible that the whole of the land will be sold to satisfy the lien, and if there are no bidders, the land is "struck off to the municipality as the purchaser." A.R.S. § 9–700(C). Thus, the statute itself defeats Hinz's contention and we need not consider any other argument rejecting the notion that the law operates to take private property without just compensation.

## HOMESTEAD ACT

Hinz finally contends that the Homestead Act, found in A.R.S. §§ 33–1101 through 33–1107, exempts a homeowner from an assessment lien. The law in this state does not support his contention. Our Supreme Court held in *Weller v. City of Phoenix*, 39 Ariz. 148, 4 P.2d 665 (1931) that homesteads are subject to a special assessment imposed by a municipal corporation.

The order of the trial court dismissing the amended complaint is affirmed and the stay of sale previously entered by this court is vacated.

HAIRE, P. J., and NELSON, J., concur.