713 P.2d 325

**J. William MOORE, Plaintiff-Appellant,**

v.

**The CITY OF CHANDLER, a municipal corporation, and Harold L. Schilling, Superintendent of Streets of the City of Chandler, Defendants-Appellees.**

No. 1 CA–CIV 7114.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 3, 1985.

On February 14, 1980, the Chandler City Council passed a resolution of intent to improve Alma School Road

> from the Western Canal to a point 300 feet south of Knox Road by the construction of paving, curbs, gutters, sidewalks, irrigation facilities, storm drain facilities, construction of connecting pavement at the following intersections: Knox Road from the monument line of Alma School Road 100 feet east....

Because the city council found the improvements would be of "more than local or ordinary public benefit, and is of special benefit to the real property hereinafter described ...", it declared that the improvements planned would be chargeable to an "improvement district." *See* A.R.S. § 9–673(B).

Improvement district number 44 was divided into two zones, zone one (the northern zone) and zone two (the southern zone) for assessment purposes. The east and west boundaries of zone one extended farther east and west than did the boundaries of zone two, resulting in a geographically wider zone. Alma School Road extends from the northern to southern boundaries of the improvement district and basically centers both zones. Appellant's property is situated on the northeast corner of Alma School and Knox Roads in zone two.

Appellant protested the establishment of the improvement district and the method of assessment of the properties within the district. The Chandler City Council overruled appellant's objections at a March 27, 1980, city council meeting. The city council calculated that less than "51% of the frontage filed a formal protest" and therefore found that the protests filed were insufficient to prohibit the establishment of the improvement district. The city council passed Resolution 868 ordering the improvements to district 44. *See* A.R.S. § 9–678.

Pursuant to an amendment effective April 22, 1980, A.R.S. § 9–686 stated that the superintendent of streets could make assessments on affected properties "[a]t any time after bids [had] been received for

Sorenson, Moore & Julian by Georgia Wilder, J. William Moore, Phoenix, for plaintiff-appellant.

Gust, Rosenfeld, Divelbess & Henderson by Fred H. Rosenfeld, Keith C. Hoskins, Phoenix, for defendants-appellees.

FROEB, Judge.

This suit involves the boundary lines of an improvement district, the alleged dilution of appellant's statutory protest rights within the district, the claimed disparity in apportioning assessments within the district, and the "front-end assessment" method utilized by the City of Chandler pursuant to A.R.S. § 9–686(C), as amended.

the construction of the work...." A.R.S. § 9–686 had previously provided that assessments could be made only after the contractor had satisfactorily completed the improvements. On July 8, 1980, the same day the city entered into construction contracts concerning the improvements, the assessments on improvement district number 44 were recorded and appellant was assessed a base assessment of $37,780.51.

In its "Statement of Assessment Policy" the city stated that assessments in zone one were calculated on a "net acreage" basis pursuant to private agreements signed by developers and property owners within that zone:

> The term "net acreage" is defined as follows: the amount each owner's land bears to the total land in Zone No. 1. The amount for each subdivision within Zone No. 1 was further refined by dividing the total amount assessed for such subdivision by the total number of lots within the subdivision; the resulting quotient being assessed against each lot within the subdivision....

Assessments in zone two were based on a "frontage true cost basis" which is "the actual cost of constructing the improvement adjacent to the subject property determined from the unit cost bid by the contractor." Properties in zone two which did not front on Alma School Road were assessed $.01.

Appellant again protested to, among other things, the establishment of the improvement district and the method of assessment utilized by the city. After work on the improvements had been completed, a hearing on the assessment was held by the city council on June 17, 1981, and final assessments were adjusted accordingly. *See* A.R.S. § 9–687.

At the hearing, the assessment of the improvement district was submitted for the approval of the city council. Objections, including appellant's, were presented to the council. Appellant's objections were overruled and the assessments as made were "confirmed and approved" as reflected in Resolution 968.

In a special action to the superior court, appellant sought a permanent injunction to prevent the city from "taking any further action to implement the resolution of intention passed by [the city council] on February 14, 1980, being Resolution No. 857...." The court dismissed appellant's complaint, following a hearing, and found that the assessment of his property was "in all respects a fair, logical and rational application of assessment procedures authorized by Arizona law...." Appellant's motion for new trial was denied and this appeal followed.

### Were the boundaries of the improvement district valid?

Appellant's first argument concerns the formation of the improvement district's boundaries.

> There are three classes of municipal improvements: First, one of practically equal benefit to the entire city. The cost of this cannot, of course, be charged against specific local property, but must cover the city as a whole. In the second class, the benefit is presumably only to the immediately abutting property, and in such case the cost may properly be assessed to that property only. *A third and intermediate class, however, frequently arises where the improvement is of less than city-wide but greater than strictly local benefit. In such case the law very properly provides that a district may be established* and the property in such district be assessed in proportion to the benefit derived therefrom, even though some of it does not abut on the proposed improvement. (Emphasis added)

*Mosher v. City of Phoenix,* 39 Ariz. 470, 480, 7 P.2d 622, 626 (1932).

Arizona Revised Statutes also provide for the establishment of an improvement district. A.R.S. § 9–673(B) states:

> When the proposed improvement, in the opinion of the governing body, is of more than local or ordinary public benefit, it

may order the expense of the improvement chargeable upon a district. . . .

In the present case, the east-west boundaries of improvement district number 44 were defined by the city to include properties in zone one which were subject to the Dobson-Hoopes Agreements. These agreements were binding upon owners of property in the Dobson-Hoopes area. Essentially, the agreements provided that, among other things, improvements to Alma School Road would be shared on a net acreage basis among the property owners within the Dobson-Hoopes area.

The east-west boundaries of zone two were defined by including all property fronting on Alma School Road as well as property lying one-half the distance to the next arterial streets. The result is that the east-west boundaries of zone one exceeds the distance of the east-west boundaries of zone two.

The city stated in Resolution 857 that the property included in the improvement district would be benefited. The city does not refute that certain property included in zone one of the improvement district was included because it was affected by the Dobson-Hoopes Agreements. Appellant argues that the city should not determine "benefit" by reference to private agreements among property owners.

Review by the court of a decision by a governmental body to form an improvement district is limited to an inquiry of whether there was arbitrary or discriminatory action or action based on fraud. *See Town of Peoria v. Hensley,* 26 Ariz.App. 30, 545 P.2d 992 (App.1976). *See also City of Globe v. Willis,* 16 Ariz. 378, 146 P. 544 (1915). The trial court did not find any of the foregoing grounds were present and upheld the formation of the district. Upon review, we find nothing which would require a contrary ruling.

■ A.R.S. § 9–673(B) does not define "benefit" since benefit will differ as each factual circumstance is considered. A.R.S. § 9–673(B) states that as long as the proposed improvement "is of more than local or ordinary public benefit" an improvement district may be formed.

■ We hold that the agreement of the property owners to share the expense of the improvements to Alma School Road is evidence of the benefit of such improvements to their property and could be considered by the city council in forming the improvement district.

■ While the property in zone two was not subject to the Dobson-Hoopes Agreements, the city could nevertheless determine that property within zone two would also be benefited. We are referred to no statute or case which provides that a district is invalidly formed where in *subsequent* assessment proceedings it is determined that one or more parcels included in the district are not benefited and are not assessed. A court could find that a district was based upon arbitrary, discriminatory or fraudulent action, but that it is not the case here. We conclude therefore that improvement district number 44 was validly established by the city.

*Did formation of the improvement district dilute appellant's protest rights?*

■ Appellant also contends that the formation of the improvement district diluted his protest rights. A.R.S. § 9–676(A) provides the manner of protesting assessments in a proposed improvement district:

The owners of a majority of the frontage of the property fronting on the proposed improvement, *or,* when the cost of the improvement has been made chargeable upon a district, the owners of a majority of the frontage of property contained within the limits of the assessment district, may make a written protest against the improvements. . . . (Emphasis added)

The statute states that, *absent* an improvement district, a protest to a proposed improvement requires a majority of frontage property owners whose property fronts *on the proposed improvement;* however, in an improvement district a majority of *all* frontage property owners within the district, not just those whose property fronts

on the improvement, is necessary for a sufficient protest. *See Amish v. City of Phoenix*, 36 Ariz. 21, 282 P. 42 (1929).

Appellant contends that certain property which was assessed only one cent or other small sums was intentionally included in the improvement district to make it difficult to consolidate a majority of frontage owners who would be willing to protest the proposed improvement district. We disagree. We have previously discussed the validity of the establishment of the boundaries of improvement district number 44 and therefore find appellant's argument to be without merit.

*Was it proper for the city to use two different assessment methods in the district?*

A.R.S. § 9–686(C) sets forth the manner of assessing property within an improvement district. When an improvement district has been established, assessments upon the parcels within the district are to be in proportion to the benefits the lot receives from the improvements.

In *Mosher v. City of Phoenix*, 39 Ariz. at 480, 7 P.2d at 626, the Arizona Supreme Court stated: "[T]he property in such district [will] be assessed in proportion to the benefit derived therefrom...." In a later case, *Weitz v. Davis*, 102 Ariz. 40, 424 P.2d 168 (1967), the court again found that assessments within an improvement district must be based on a "benefits to property" method of assessment. In *Town of Peoria v. Hensley*, this court stated that a "benefit" method of assessment is to be used in an improvement district. In the latter case, the court found that "[t]he determination as to the special benefits to be received by a particular lot within the improvement district is generally conceded to be a legislative function of the common council of the town." 26 Ariz.App. at 32, 545 P.2d at 994 (1976). Accordingly, the court held that the standard of review in determining whether an assessment correctly reflects the benefits derived from the proposed improvement is "whether the common council's opinion is supportable, that is, not arbi-

trary, fraudulent or discriminatory." 26 Ariz.App. at 32, 545 P.2d at 994. *See also Hammer v. City of Tucson*, 26 Ariz.App. 229, 547 P.2d 500 (1976). The same standard of review is applicable for review of a city council's determination of the method of assessing benefits.

■ This case presents a somewhat novel factual situation wherein an improvement district contains land, some of which is affected by a private agreement binding property owners to share the expense of improvements, while other land in the district is not involved in the agreement. Because of this situation the "Statement of Assessment Policy" issued by the city states that assessments in zone one were based on a net acreage basis while assessments in zone two were based on a frontage true cost basis. The assessment policy also states that, but for the private agreement, "all costs and expenses of improvements in Zone No. 1 should have been assessed on a frontage true cost basis in the same manner as was used in Zone No. 2."

Appellant complains that different methods of assessing property within one improvement district invalidates the assessment. We disagree.

Under the facts of this case, it was appropriate for the city to measure benefits in zone two by use of the frontage true cost basis when it determined only those properties fronting on Alma School Road were benefited by the improvements. However, in zone one, *all* properties subject to the Dobson-Hoopes Agreements were found to be benefited, not just those properties fronting on Alma School Road. Accordingly, the net acreage basis of assessment was appropriately used to measure benefit.

In *Weitz v. Davis*, the Arizona Supreme Court quoted approvingly from a Michigan case which stated:

Where the rule of apportionment is according to the special benefits derived, the application of that rule may be effected by the employment of any method

which will accomplish that purpose, whether it be by valuation, frontage, superficial area, or any other method which does not lose sight of the fundamental basis of special assessments for local improvement.

102 Ariz. at 43, 424 P.2d at 171. Appellant has failed to demonstrate that the city council acted in an arbitrary, fraudulent or discriminatory manner in measuring the benefits to properties in zones one and two in improvement district 44. The conclusion of the trial court so finding is affirmed.

### Were properties in zone two properly assessed?

Appellant next argues that zone two was assessed on a "frontage" method, contrary to A.R.S. § 9–686(C) and case law authority. In *Wietz v. Davis*, the Arizona Supreme Court stated:

"It is clear from a comparison of A.R.S. § 9–686, subsec. C and the statement of the frontage method above that the benefits to property method and the frontage method are separate and distinct means of assessment. Nevertheless, the frontage method is sometimes a convenient method for estimating the benefits to property and may result in a practical adjustment of proportional benefits."

102 Ariz. at 42, 424 P.2d at 170.

In *Hinz v. City of Phoenix*, 118 Ariz. 161, 575 P.2d 360 (1978), this court stated:

Arizona Revised Statute § 9–686(C) requires the superintendent to assess lots "in proportion to the benefits to be received by each lot." Use of the frontage method is appropriate in some instances, but only when it fairly reflects the benefits to each lot.

118 Ariz. at 163, 575 P.2d at 362. Use of the frontage method of assessment within a district is appropriate when it fairly reflects the benefits to each lot and is not applied in a fraudulent, arbitrary or discriminatory manner by the city council.

In this case, the city found that the only properties benefited by the improvements in zone two were those properties fronting on Alma School Road. All proper-

ties not adjacent to Alma School Road were therefore assessed only $.01. Under these circumstances, it was appropriate to use a "frontage true cost" method of assessment in zone two. This method was correctly used to assess property in proportion to the benefits received. There is no evidence that the city council adopted this method of assessment for fraudulent, arbitrary or discriminatory purposes and the trial court properly so found.

Appellant also argues that he alone was assessed for "tiling and constructing ... the Salt River Project lateral from the center of Alma School Road east along Knox Road...." He contends that this improvement benefited the entire improvement district and therefore it was improper to assess only appellant for this cost. *See* A.R.S. § 9–686(C).

The city contends that appellant was properly assessed for this particular expense because the Chandler city code *required* appellant to provide this improvement. Therefore, when the city provided the improvement, appellant benefited from the city's action. Appellant does not rebut the city's contention that he was required to provide said improvement.

We hold, as did the trial court, that relief from an obligation imposed by the Chandler city code is a benefit and therefore appellant was properly assessed for those improvements constructed by the city.

Appellant also argues that certain property fronting on Alma School Road in zone two was assessed at a lesser rate than was his, and property not fronting on Alma School Road, though still included in zone two, was also assessed at a lesser rate.

The city contends that property not fronting on Alma School Road was assessed only one cent because these properties received no benefit from the proposed improvements. Unlike property adjacent to Alma School Road, there is no contention that these properties had an obligation under the city code to provide for the improvements. Additionally, there was no

other evidence of benefit presented to support assessing these properties. Appellant does not dispute the city's argument. Property which is not benefited should not be assessed. A.R.S. § 9–686(C); *Larsen v. San Francisco*, 182 Cal. 1, 186 P. 757 (1920); and *Logan v. City of Glendale*, 102 Cal.App.2d 861, 229 P.2d 128 (1951). (We note in *Hammer v. City of Tucson*, 26 Ariz.App. at 230, 547 P.2d at 501, that the court of appeals found "[o]ur statutes on public improvements, A.R.S. Sec. 9–671 et eq. were taken from California and decisions from that jurisdiction are therefore 'extremely persuasive'.")

■ Certain property fronting on Alma School Road was also assessed only one cent. However, the city points out, and the trial court found, that the owners of those properties had already complied with the city code in providing the required improvements. The city was correct therefore in not assessing property for improvements already provided by the owner. A.R.S. § 9–673(A). *See also White v. County of San Diego*, 26 Cal.3d 897, 163 Cal.Rptr. 640, 608 P.2d 728 (1980); and *Cogan v. City of Los Angeles*, 34 Cal.App.3d 516, 110 Cal.Rptr. 100 (1973).

Last on the issue of assessment, appellant contends that for subdivided property still owned by *one* owner, assessments were spread over the several parcels of the subdivision rather than only on those parcels fronting on Alma School Road. At trial, Richard Pearce, a witness responsible for spreading the assessments, was questioned on this method of assessment:

Q. For purposes of spreading the assessment did you treat an entire subdivided area under single ownership as one parcel?

A. Yes.

Q. And then when those parcels were divided into lots did the ultimate assessment spread the cost throughout all the lots in the subdivision?

A. Yes, where the owner requested that.

\*     \*     \*     \*     \*     \*

Q. In other words, you merely treated those subdivisions as a single fronting unit and then divided that total assessment for the amount of usable lots to determine the actual per lot assessment in each of those areas?

A. Yes.

The city contends that in cases of subdivided property, "total assessment was based on its frontage and [then] spread over the entire development." Further, a subdivision as a whole, not just that part fronting on Alma School Road, is responsible for improvements to the street. Chandler also argues that, in any event, this method of assessment did not affect appellant's assessment.

■ Appellant does not dispute that property which fronts on Alma School Road was obligated, by the Chandler city code, to provide certain improvements to Alma School Road. He argues that parcels within subdivided property fronting on Alma School Road should be separated from those properties within the subdivided property which do not. We are referred to no legal authority for this. When such property is in one ownership, the entire subdivided property fronts on Alma School Road and is therefore obligated to provide the required improvements. When the improvements were provided by the city, the entire subdivided property was benefited and was properly assessed.

We uphold the finding of the trial court that there was no discriminatory, arbitrary or fraudulent action by the city council in the assessments made within improvement district 44.

*Did the city improperly follow a front-end assessment procedure?*

Appellant last argues that the city improperly followed a "front-end assessment" procedure.

Effective April 22, 1980, A.R.S. § 9–686(C) read, in part:

At any time after bids have been received for the construction of the work or the municipality has entered into a

contract to purchase an existing facility, the superintendent shall estimate ... the benefits arising, or expected to arise, from the work. He shall thereupon make an assessment....

Prior to amendment, A.R.S. § 9–686(C) read, in part:

The superintendent shall, as soon as the contractor has fulfilled his contract to the satisfaction of the superintendent, estimate ... the benefits arising from the work and projected to each lot. He shall thereupon make an assessment....

Appellant contends that since the Resolution of Intention was passed by the city council on February 14, 1980, prior to the effective date of the amended statute, the city should have followed the assessment procedure found in A.R.S. § 9–686(C) prior to its amendment.

 The city answers by stating that since the change in the statute was procedural and did not affect substantive rights, it could be applied retroactively, relying on *In re Dos Cabezas Power District*, 17 Ariz. App. 414, 498 P.2d 488 (1972) and *Allen v. Fisher*, 118 Ariz. 95, 574 P.2d 1314 (App. 1977).

While it appears that the Legislature did not intend to apply the amendment retroactively, we hold that A.R.S. § 9–686(C), as amended, was properly applied to the facts of this case. The amendment affected procedural changes, it did not affect or impair vested rights. "[S]tatutory changes in procedure or remedies may be applied to proceedings already pending except where the statute affects or impairs vested rights. (citations omitted)." *Allen v. Fisher*, 118 Ariz. at 96, 574 P.2d at 1315. We affirm the superior court's finding that the "front-end assessment" method was properly used.

*Did appellant waive his objections to the confirmation of the assessment of the improvement district?*

The city argues that appellant waived his objection to the confirmation of the assessment of the improvement district

because he filed a written objection which was read into the record at the hearing on the assessment rather than making a personal appearance and presenting evidence. We disagree. Appellant complied with A.R.S. § 9–687 which provides for the method of protest to the assessment which is available to an interested party. The statute does not require a personal appearance.

For the foregoing reasons, the judgment is affirmed.

CORCORAN and OGG, JJ., concur.